UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| CHAD BLANCHARD | * | CIVIL ACTION NO.12-3140 |
| VERSUS | * | JUDGE DOHERTY |
| THE UNITED STATES OF AMERICA THROUGH ITS AGENCY THE UNITED STATES ARMY CORPS OF ENGINEERS | * | MAGISTRATE JUDGE HANNA |

**PRE-TRIAL ORDER**

**Trial Date:  June 17, 2014**

**Pre-Trial Conference Date:  June 6, 2014**

**Type of Trial:  _____  JURY   X  BENCH**

**Trial Attorney Attending:**              **Party/Claim Represented:**

Jason M. Welborn                   Attorneys for Plaintiff, Chad Blanchard
Joseph F. Gaar, Jr.
Willard P. Schieffler
Lucas S. Colligan
Jacob H. Hargett

Stephen M. Ketyer                  Attorneys for Defendant, United States of America
Jennifer Bailey Frederick

Scott A. Soule                     Attorneys for Defendant, Stallion Oilfield Services, Ltd.
Josephine A. Hood

1

1)    **Claims and Responses**:

A)    ***Plaintiff, Chad Blanchard***

Plaintiff, Chad Blanchard, asserts his causes of action against defendants, United States of America and Stallion Oilfield Services, Ltd., pursuant to the Jones Act, 46 U.S.C.A. § 688, et seq. and General Maritime Law, 28 U.S.C.A. § 1333, et seq. Mr. Blanchard prays for monetary damages from defendants for serious and permanent injuries incurred as a result of a "waking" accident that occurred on August 18, 2011.

On August 18, 2011, plaintiff, Chad Blanchard, was a deck hand working aboard the M/V ALLURA, a vessel owned and operated by his employer, Stallion Offshore Services, Ltd. The ALLURA is a two (2) man push boat that was operating on the Atchafalaya River pursuant to an ongoing construction project being performed near mile marker 84 at a Hill Corp docking facility. It is undisputed that Mr. Blanchard is a Jones Act seaman employed by Stallion. Furthermore, it is undisputed that he is a member of the crew and had a connection to the ALLURA that was substantial in terms of both its nature and duration.

Also on August 18, 2011, the United States of America, through the United States Army Corps of Engineers, owned a large triple screw push vessel known as the M/V MISSISSIPPI. The M/V MISSISSIPPI was being operated by employees of the U.S. Army Corps of Engineers, and was doing a water and land survey pursuant to the directive of the Corps of Engineers. At the time of the accident complained of, the M/V MISSISSIPPI was operating in a down river direction of the Atchafalaya River near mile marker 84.

On August 18, 2011, the M/V ALLURA was being captained by Captain Harris Knott, employee of Stallion. At the conclusion of work on this date, Captain Knott elected to depart the M/V ALLURA with the intention of being away overnight and returning in the morning. In association with his desire to leave the vessel, Captain Knott positioned the vessel in the main channel of the Atchafalaya River, tied up to several pilings located within the river body. Thereafter, Captain Knott departed the vessel with a crew boat being captained by a Mr. Troy Simar, with the intention of leaving Mr. Blanchard alone aboard the ALLURA overnight.

Just after Captain Knott and Mr. Simar departed the ALLURA in their small work boat, they proceeded upriver toward Butte La Rose. At approximately one-half to one mile from the ALLURA, they encountered the M/V MISSISSIPPI proceeding downriver. According to the eyewitness testimony from both Captain Knott and Troy Simar, the M/V MISSISSIPPI never reduced its forward speed, nor back down on its throttle, at the time they encountered it approximately one-half to one mile from the ALLURA. According to both witnesses, the M/V MISSISSIPPI was throwing a wake of approximately 5 to 6 feet, which caused them to bring their boat to a dead stop in order to traverse the extremely large and dangerous wakes.

2

Shortly after Mr. Simar and Captain Knott's encounter, the M/V MISSISSIPPI crossed the area where the M/V ALLURA had been moored. Pursuant to his duties aboard the vessel, Mr. Blanchard was attempting to descend a ladder/stairway into the engine room at the time the M/V MISSISSIPPI's wakes reached the ALLURA. According to the testimony provided by Mr. Blanchard, a series of large wakes sufficient to clear the free board of the M/V ALLURA broke over the vessel, and caused it to be violently upset. As a result, Mr. Blanchard fell down the stairs severely injuring his back, shoulder, and elbow.

Plaintiff has brought suit against his Jones Act employer, Stallion, on two (2) grounds. Initially, plaintiff asserts that Stallion failed to properly pay maintenance and cure benefits, causing an unconscionable delay in his receiving treatment and being provided for during his period of convalescence. As a result of Stallion's failure to properly pay maintenance and cure, Mr. Blanchard's treatment was delayed for the better part of a year. As a result, plaintiff is seeking both compensatory and punitive damages for Stallion's failure to properly pay maintenance and cure, or their denial of maintenance and cure without just cause.

Secondly, plaintiff alleges that Captain Harris Knott, an employee of Stallion, improperly moored the vessel in the body of the Atchafalaya River where a protective cove was available. In leaving Mr. Blanchard along aboard the boat in the body of the Atchafalaya River, he exposed him to the risk of severe danger. Indeed, plaintiff has asserted that the failure to have a second person on board to act as a lookout, or render assistance, creates liability against Stallion directly for the accident and injuries complained of.

Plaintiff also brought suit against the United States Corps of Engineers who falls within the jurisdiction of the said Honorable Court by operation of the Public Vessels Act, 46 U.S.C.A. § 31101 - 31113. Plaintiff alleges that the actions of the captains aboard the M/V MISSISSIPPI, in failing to operate their vessel at a safe speed, after recognizing the presence of the ALLURA, creates liability under the Inland Navigational Rules governing safe speed. As this Court is well aware, a vessel is responsible for its wakes, and any injury or damages caused by these large and dangerous wakes. According to the eyewitness testimony of Captain Knott, Troy Simar, and Chad Blanchard, the M/V MISSISSIPPI was throwing a wake of better than five (5) to six (6) feet.

As a result of the single or combined negligence of the entities complained of, Mr. Blanchard has undergone elbow surgery performed by Dr. Louis Blanda, lumbar epidural steroid injections performed by Dr. Louis Blanda, and had a recommendation for a shoulder surgery. There is no adverse medical as to these conditions, as the defendants' IME physicians, Dr. Greg Gidman and Dr. Paul Fenn, concurred with the procedures being performed or recommended by Dr. Blanda. However, Mr. Blanchard continues to suffer from ongoing complaints of his lower back, which may necessitate lumbar surgery. Currently, the trial deposition of Dr. Blanda is scheduled which will answer the question of whether or not surgery is reasonable, necessary, and warranted. Plaintiff specifically makes a claim for lost wages at a rate of $265 a day, his earnings at the time of the accident, any future loss of earning capacity, his past incurred medical expenses, his future medical expenses deemed necessary by the treating physicians, and all general damages to which this Court

finds appropriate. In addition, plaintiff has sought punitive and compensatory damages for Stallion's failure to timely pay maintenance and cure and for terminating maintenance and cure without just cause.

### B.    Defendant, United States of America

### Response to Claims Asserted by Blanchard and Stallion

The United States of America ("United States") responds to the complaint filed by Plaintiff Chad Blanchard ("Blanchard"), and the cross-claim of Stallion Oilfield Services, LLC ("Stallion"), as a result of an alleged wake incident caused by an Army Corps of Engineers' vessel on the Atchafalaya River, on August 18, 2011. The vessel, the Corps' vessel, the M/V MISSISSIPPI, is a public vessel under the Public Vessels Act, 46 U.S.C. Ch. 311, which extends subject-matter jurisdiction to the Court for this claim.

**1)    The United States denies any negligence contributing to the accident and/or injuries of Blanchard.**

**a)    The United States denies Blanchard's and Stallion's allegations that the M/V MISSISSIPPI passed the moored M/V ALLURA at an excessive speed, or generated an excessive wake.**

On August 18, 2011, the Army Corps' vessel M/V MISSISSIPPI navigated the length of the Atchafalaya River, from north to south, during the Mississippi River Commission's annual low-water inspection.

The MISSISSIPPI's pilots, Mr. Cary Lewis and Assistant Master Leo Hendrix, at all relevant times operated the vessel at safe speeds and in compliance with the Inland Navigation Rules concerning vessels' wakes, including when the MISSISSIPPI passed the ALLURA, moored at Mile 85.7. The MISSISSIPPI's bow and stern wakes, while inevitably inducing some minor movement in the ALLURA, did not result in the violent upset that Blanchard describes and did not cause Blanchard, an experienced seaman, to fall. The United States will present expert testimony of Dr. Arthur M. Reed of the Naval Surface Warfare Center, Carderock Division, to explain the characteristics and effects of the waves made by the MISSISSIPPI that arrived at the ALLURA. Based on calculations confirmed by his personal observations, it is his opinion that the bow wake reaching the ALLURA would not have been more than 0.9 feet. He also calculates that even the stern wake would have been preceded by at least a dozen smaller oscillations and would not have caused water to come aboard in any significant quantities, such that empty buckets on the stern were filled and water flowed into the engine room, as Mr. Blanchard claims.

4

The M/V ALLURA suffered no damage, therefore, no presumption of fault on the part of the M/V MISSISSIPPI should apply. *Maxwell v. Hapag-Lloyd Aktiengesellschaft*, 862 F.2d 767, 769 (9th Cir. 1988) ("A presumption of fault does not extend to personal injuries occurring as a result of a fall on properly moored vessels that do not themselves suffer damage.").

There were no eyewitnesses to the ALLURA's encounter with the MISSISSIPPI's wake. Blanchard himself was in an interior space not watching the MISSISSIPPI as it passed, although he had seen it approaching before going inside.

The United States questions whether the Blanchard's fall occurred at the same time as the MISSISSIPPPI's passage. Blanchard had instructions to phone the ALLURA's master, Captain Harris Knott, in the event of a problem, but did not attempt to contact the ALLURA's master, by cell phone or by radio. He did not attempt to contact anyone at Stallion. He did not attempt to contact the Coast Guard, or dial the emergency phone number that the dock owner had posted on its dock. Blanchard does claim that after he fell, he climbed up three decks to the ALLURA's wheelhouse and radioed the MISSISSIPPI in anger, though there is no evidence anyone on the MISSISSIPPI or any other vessel heard such a call.

      **2)**        **The United States contests Blanchard's asserted damages.**

           **a)**        **The United States denies Blanchard's assertion of his past lost wages.**

The United States joins Stallion in contending that Blanchard inaccurately asserts lost wages at the rate of $265 a day because the evidence shows his average daily wage was considerably lower.

           **b)**        **The United States denies Blanchard will require substantial additional medical treatment and submits he has reached maximum cure for his reported lumbar and shoulder injuries.**

The United States joins Stallion in contending that Blanchard has reached maximum cure for his lumbar back complaints. Dr. Gordon Gidman, an orthopedic surgeon who had been the first physician to examine Blanchard in August 2011, now opines that Blanchard requires no further treatment and is not a surgical candidate, and does not require additional lumbar epidural steroid injections. Dr. Gidman also opines that, at present, Blanchard requires only home therapy.

Dr. Lewis Blanda, Blanchard's current treating physician, has never recommended lumbar surgery and believes the epidural steroid injections he recommended have been successful. He has placed Blanchard on a home exercise program.

The United States further contends that despite Blanchard's complaints he does not have any ongoing problems with his shoulder. Blanchard underwent an ulnar transition surgery to his right elbow on February 3, 2014, after which Dr. Gidman examined him and found that Blanchard could be released to light duty work relative to his upper right extremity. Dr. Gidman anticipates maximum

cure for the arm injury will be reached between December 2014 and February 2015.

**Cross-Claim Against Stallion**

The United States of America asserts a cross-claim against defendant Stallion Oilfield Services, Ltd. for contribution.

Prior to the alleged accident, Captain Knott, the master of the ALLURA, passed the MISSSISSIPPI from a crew boat coming the other way and purportedly observed an extraordinary wake. Captain Knott nevertheless did not attempt to contact and warn Blanchard by mobile phone or radio, nor did he attempt to communicate his concerns to the MISSISSIPPI; nor did he return the ALLURA, after the MISSISSIPPI passed, to assess its welfare and the welfare of his deckhand.

### C.  *Defendant, Stallion Oilfield Services, Ltd.*

**Response to Claims Asserted by Chad Blanchard**

Stallion Oilfield Services, Ltd. (hereinafter "Stallion") responds to the cause of action filed by Plaintiff Chad Blanchard, and prayer for monetary damages for injuries, incurred as a result of the "wave wash" occurrence on August 18, 2011. Stallion admits that at all material times hereto, Plaintiff was in the employ of Stallion as a contract hand, having status as a Jones Act seaman, with a connection to the M/V ALLURA that was substantial in terms of both its nature and duration. Stallion contends the allegations of Plaintiff consist of combined issues of law and fact.

1)     **Stallion denies any negligence contributing to the accident and/or injuries of Plaintiff.**

a)     **Stallion denies Plaintiff's allegations that Captain Harris Knott improperly moored the ALLURA on the date of the incident.**

Stallion contends that on August 18, 2011, the USA, through its agent the United States Army Corp of Engineers and its employees (hereinafter "USA"), was operating the M/V MISSISSIPPI in the Atchafalaya River, southbound, near mile marker 84. Also on that date, the M/V ALLURA, under the direction of Captain Harris Knott, was properly moored and anchored to pilings at the Lake Chicot dock in the Atchafalaya, off-duty for the night. The factual testimony of Captain Knott establishes that although an inlet existed just southbound of the pilings that the ALLURA was moored to, the water stage was too low for the M/V ALLURA to be moored in the inlet on that particular date, and would have required him to "wheel-wash" into the inlet; less water existed in the inlet than the draft of the ALLURA. Additionally, there was no cell phone coverage in the inlet, such that no communication would have been possible. Accordingly, Captain Knott made an informed and reasonable decision to moor the ALLURA to the deck facility. The ALLURA was moored upriver with two lines, one at the port bow, and one on the stern quarter. Further, the M/V

6

ALLURA was moored in a location where Plaintiff would have cell-phone service to ensure he was able to communicate should the need for assistance arise.

        **b)**      **Stallion denies Plaintiff's allegations that failure to have a second man aboard, acting as a lookout and rendering assistance, creates any direct liability for the accident and injuries complained of.**

Stallion contends that the absence a second man aboard the ALLURA while in off-duty status does not create any liability for the subject accident. Stallion further contends that this allegation has no basis in law or fact. Plaintiff is unable to articulate any specific rule, issued by United States Coast Guard or otherwise, that would require a look-out while an uninspected work boat is not in service and is moored overnight. Accordingly, this allegation creates no direct liability on the part of Stallion.

    **2)**      **Stallion denies Plaintiff is entitled to punitive or compensatory damages for the delay in payment of maintenance and cure benefits.**

Stallion avers that Plaintiff is not entitled to punitive damages as he has been provided maintenance and cure, and Stallion's conduct has not been arbitrary, capricious, or willful. If Plaintiff's maintenance and cure benefits were not paid timely, Plaintiff has not been injured or even prejudiced by the alleged untimely payment of benefits. Plaintiff at all material times was represented by counsel, who could have taken corrective measures on behalf of his client. Furthermore, Plaintiff had in his possession the contact information of a representative of Stallion, to whom he could have sought out in order to expedite the payment of benefits. Finally, Stallion had the duty to fully investigate this claim, which was originally handled as a worker's compensation matter, both as to the medical, employment, and surveillance.

    **3)**      **Stallion contests Plaintiff's asserted damages.**

        **a)**      **Stallion denies Plaintiff's assertion of his daily wage.**

Stallion contends Plaintiff inaccurately asserts lost wages at the rate of $265 a day; Plaintiff's daily wages did not amount to $265, as Plaintiff did not work a consistent schedule, his average daily wage was considerably lower than asserted.

        **b)**      **Stallion denies Plaintiff is entitled to substantial continuing medicals, and is at maximum cure for his reported lumbar and shoulder injuries.**

Stallion contends that Plaintiff has reached maximum cure for his lumbar back complaints. Dr. Gidman has found that Plaintiff is at MMI for the condition, and requires no further treatment; he is not a surgical candidate. He does not require additional lumbar epidural steroid injections; Dr. Gidman has opined that all he requires is home therapy. Accordingly, Stallion contends that Plaintiff is at maximum cure for his lumbar condition. Stallion further contends that Plaintiff does not have

ongoing shoulder issues, and is at maximum cure. Stallion approved and Plaintiff underwent an ulnar transition surgery for a tardy ulnar nerve to his right elbow. Dr. Gidman has found that Plaintiff is released to light duty work relative to his upper right extremity, and that he has not yet reached MMI in regards to the right ulnar nerve transposition surgery performed on February 3, 2014. However, Plaintiff's function with his right arm is anticipated to increase, and MMI will be reached between December 2014 and February 2015.

### Cross-Claim Against the USA

Stallion Oilfield Services, Ltd. asserts a cross-claim against defendants, United States of America through its agency the United States Army Corp of Engineers. The cross-claim against the USA arises out of the same transaction or occurrence that is the subject matter of the original action of Plaintiff against Stallion and the USA. Therefore, jurisdiction of this Honorable Court is based on the existence of this Honorable Court's jurisdiction over the original complaint.

Stallion contends the USA was negligent in its operation of the M/V MISSISSIPPI, and was obligated to exercise due and proper care and to proceed carefully and prudently so as to avoid causing wake damage, including but not limited to injury to personnel.[1] Stallion further contends that if the Plaintiff suffered any damage/injury and is entitled to recover either in whole or in part against Stallion, such damages were not caused or contributed to by any act or omission on the part of Stallion, or its employees, or any person for whom Stallion was responsible. Rather, said damages were caused by the fault, neglect, and lack of due care on the part of the USA.

Stallion prays for judgment on its cross-claim in its favor and against the USA for recovery by way of indemnity and/or contribution and/or reimbursement and/or recovery as a matter of law for any sums which Stallion may be obligated to pay to the Plaintiff in the main demand by judgment and/or settlement and/or otherwise, including interest, and Stallion specifically prays for all costs, attorneys' fees, maintenance, cure, and expenses incurred in the defense of this action, and for all such general equitable relief as the nature of the case may permit.[2]

### 2)    Procedural History and Posture:

Currently, no party anticipates the need to amend the pleadings. While no amendments are currently anticipated, should the need for any amendments arise, all will be filed in accordance with the Court's Scheduling Order provided by this Honorable Court.

---

[1] A vessel causing injury to others by her swell must be held responsible for any failure to appreciate the reasonable effect of her own speed and motion through the water at the particular place and under the particular circumstances where the injury occurred. *Creole Shipping, Ltd. v. Diamandis Pateras, Ltd.,* 410 F.Supp. 313, 316 (S.D. Ala. 1976), aff'd 554 F.2d 1348 (5th Cir. 1997).

[2] The Fifth Circuit has repeatedly recognized the right of a vessel operator compelled to pay maintenance and cure to indemnity from the tortfeasor responsible for the injury. *See, e.g. Savoie v. LaFourche Boat Rentals, Inc.* 672 F.2d 722 (5th Cir. 1980); *see also Gautheir v. Crosby Marine Services, Inc.,* 576 F.Supp. 681 (E.D. La. 1980), aff'd 752 F.2d 1085 (5th Cir. 1985).

Further, currently, no party anticipates any motions at this time as a result of ongoing discovery. While no motions are currently anticipated, should the need for any motions arise, all will be filed in accordance with the Court's Scheduling Order provided by this Honorable Court.

3) <u>**Estimated Length of Trial**</u>:

The estimated length of trial is three (3) days.

4) <u>**Issues of Law**</u>:

    *A.*      ***Plaintiff, Chad Blanchard***

    a)      Whether the mooring of the M/V ALLURA in the body of the Atchafalaya was unreasonably dangerous;

    b)      Whether leaving Chad Blanchard as a solidary seaman aboard a vessel in the main body of the Atchafalaya constitutes negligence on behalf of Stallion and its captain, Harris Knott; and

    c)      Whether the United States Corps of Engineers and its captains improperly navigated/operated the M/V MISSISSIPPI in a reckless or dangerous manner;

    d)      Whether the United States Corps of Engineers and its captains violated the Inland Navigational Rules for safe speed in creating a large and dangerous wake, the effects of which they are responsible for;

    e)      Whether the reduction of speed by the M/V MISSISSIPPI before encountering the ALLURA was sufficient to meet its obligations under the Inland Navigational Rules governing safe speed and responsibility for one's wake;

    f)      Whether the M/V ALLURA was negligently moored at the time of plaintiff, Chad Blanchard's, accident;

    g)      Whether defendant, Stallion, had complied with its maintenance and cure duties under the Jones Act;

    h)      Whether the defendants caused Mr. Blanchard's injuries and damages;

    i)      The nature and extent of Mr. Blanchard's injuries and damages;

    j)      The amount of compensatory damages to which Mr. Blanchard is entitled; and

    k)      The amount of punitive damages to which Mr. Blanchard is entitled.

###### **B.    Defendant, United States of America**

In addition to those issues of law already included by Blanchard and Stallion, the United States identifies the following:

    a)    Whether injuries sustained by Blanchard were caused solely by his own negligence and fault, such that defendant United States is entitled to judgment, including costs of suit.

    b)    Whether injuries sustained by Blanchard were caused or contributed to by the negligence and fault of Stallion Oilfield Services, Ltd., such that the United States is entitled to comparative contribution from the USA for any and all sums the United States may have to pay to Blanchard, by way of judgment or otherwise, including costs of suit.

    c)    Whether a presumption of fault extends to personal injuries occurring as a result of a fall on a properly moored vessel that does not itself suffer damage.

#### **C.    Defendant, Stallion Oilfield Services, Ltd.**

In addition to those issues of law already included by Plaintiff, Stallion identifies the following:

    a)    Whether injuries sustained by Plaintiff Chad Blanchard were caused solely by the negligence and fault of defendant USA, such that defendant Stallion is entitled to complete indemnity from the USA for any and all sums defendant Stallion has paid or will pay in the future, by way of judgment or otherwise, including interest, cost and attorneys' fees;

    b)    Whether injuries sustained by Plaintiff Chad Blanchard were caused or contributed to by the negligence and fault of the USA, such that Stallion is entitled to comparative contribution from the USA for any and all sums Stallion has or may have to pay to Plaintiff, by way of judgment or otherwise, including interest, costs and attorneys' fees;

    c)    Whether Plaintiff is entitled to any punitive damages as a result of Stallion's untimely payment of maintenance and cure benefits;

    d)    Whether Plaintiff is entitled to any compensatory damages as a result of Stallion's untimely payment of maintenance and cure benefits; and

    e)    Whether the navigation of the M/V MISSISSIPPI gives rise to application of the rule of <u>The Pennsylvania</u>, 84 U.S. 148 (1874).

**5)**    <u>**Thumbnail Sketch of Facts:**</u>

   *A.*    <u>*Plaintiff, Chad Blanchard*</u>

   On August 18, 2011, complainant, Chad Blanchard, was a seaman in the employ of Stallion Oilfield Services, Ltd. Mr. Blanchard was employed as a crew member and permanently assigned to work aboard the M/V ALLURA. On August 18, 2011, as complainant was descending stairs aboard the Stallion vessel, the Stallion vessel was suddenly and unexpectedly impacted by the large wakes discharged from the M/V MISSISSIPPI traveling at an unsafe speed. Mr. Blanchard sustained injuries to his neck, back, spine and body as a whole when he fell down the stairway in the engine room of the M/V ALLURA. Mr. Blanchard's accident and injury was caused by a large wake created by the passage of the M/V MISSISSIPPI.

   Alternatively, complainant was injured as a result of the negligent mooring or positioning of the M/V ALLURA by the captain employed by defendant, Stallion. Moreover, plaintiff was left aboard the M/V ALLURA by the Captain and all crew leaving the vessel undermanned and thus unseaworthy.

   *B.*    <u>*Defendant, United States of America*</u>

   On Thursday, August 18, 2011, the M/V MISSISSIPPI, a public vessel operated by the U.S. Army Corps of Engineers, traveled the length of the Atchafalaya River from Mile 1, transporting members of the Mississippi River Commission and local stake holders on the Commission's semi-annual river inspection trip. The navigation watch consisted of Steersman Mate Cary Lewis, and Assistant Master Leo Hendrix.

   At approximately 3:15 p.m. local time with Mr. Lewis at the console and Capt. Hendrix on lookout, Mr. Lewis made visual contact with the ALLURA a bit more than 1¼ miles upstream from it. He slowed the MISSISSIPPI in anticipation of passing the moored vessel. Earlier, Mr. Lewis had noted the ALLURA's AIS signal and was looking for it as he rounded a bend in the river that begins below Mile 84. Traveling with a current that he estimated to have been 1½ to 2 miles per hour, Mr. Lewis slowed the MISSISSIPPI to a through-the-water-speed of about 10 miles per hour from approximately ¾ mile upriver of the ALLURA. As the MISSISSIPPI slowed, Capt. Hendrix took the opportunity to exchange places at the console and relieve Mr. Lewis. During the relief briefing, Mr. Lewis pointed out the ALLURA. The MISSISSIPPI maintained approximately 10 mph through the water until it passed the ALLURA at a distance of nearly 200 yards, at which time it resumed speed.

   *C.*    <u>*Defendant, Stallion Oilfield Services, Ltd.*</u>

   On August 18, 2011, Plaintiff Chad Blanchard was a contract worker employed as a deckhand aboard the assured's M/V ALLURA. The M/V ALLURA was properly and securely moored at the Hilcorp Lack Chicot Dock on the Atchafalaya River, by Chad Blanchard. Around 4:00

pm., Captain Knott went off-duty, and departed the ALLURA on a crewboat operated by Troy Simar. Plaintiff elected to remain on board. The crewboat, traveling northbound, passed the M/V MISSISSIPPI, and was forced to slow down and maneuver to the east bank of the Atchafalaya and wait out the reported 5 to 6 foot wake produced by the M/V MISSISSIPPI. Thereafter, the M/V MISSISSIPPI, owned and operated by the USA, continued traveling southbound, and passed the moored ALLURA at an excessive rate of speed, causing the Plaintiff to fall down the stairwell while he was descending into the engine room to complete a task.

Plaintiff allegedly suffered physical injuries to his lower back, right shoulder, and right elbow, for which Stallion has paid maintenance and cure pursuant to Plaintiff's status as Jones Act seaman. Stallion contends that they are entitled to indemnification from the USA, who was at sole fault in the injury to Plaintiff, due to their failure to exercise proper and due care in the operation of the M/V MISSISSIPPI.

6)    **Stipulations:**

　　　　*A.    Plaintiff, Chad Blanchard*

a)    Plaintiff was a Jones Act Seaman at all the time of the accident;

b)    M/V ALLURA was owned by defendant, Stallion at the time of the accident;

c)    Defendant, Stallion, was the employer of plaintiff, Chad Blanchard;

d)    M/V MISSISSIPPI was owned and operated by the USACOE; and

　　　　*B.    Defendant, United States of America*

a)    The United States agrees to those stipulations offered by Blanchard.

b)    Stipulate that the AIS data obtained from the Coast Guard for the M/V MISSISSIPPI and the M/V ALLURA, listed on spreadsheets, are reliable.

c)    Stipulate that Army Corps Atchafalaya Navigation Map No. 23 (2007) (exhibits in the Knott and Simar depositions) was in effect on the August 18, 2011.

*C.    Defendant, Stallion Oilfield Services, Ltd.*

Stallion agrees to those stipulations offered by Plaintiff.

All parties stipulate that the opinions contained in Dr. Gidman's reports are his opinions and if asked that he would testify in accordance with what is in them.

7)    **Witnesses:**

    *A.     Plaintiff, Chad Blanchard*

    a)     Chad Blanchard - Mr. Blanchard will testify as to the accident and injuries incurring on August 18, 2011.

    b)     Troy Simar - Mr. Simar will testify as to his knowledge regarding the speed, motion, and wake being created by the M/V MISSISSIPPI on the date of accident.

    c)     Captain Harris Knott - Captain Knott will testify regarding the mooring the M/V ALLURA, the complaints made by Mr. Chad Blanchard following the accident, and the movement, speed, and wake being created by the M/V MISSISSIPPI on the date of accident.

    d)     Captain Cary Lewis - Captain Lewis will testify regarding his piloting of the M/V MISSISSIPPI on the date of accident.

    e)     Captain Leo Hendrix - Captain Hendrix will testify regarding his piloting of the M/V MISSISSIPPI on the date of accident.

    f)     Ronnie Powell - Mr. Powell will testify regarding his knowledge of the accident and injuries suffered by Chad Blanchard, the payment of or decisions not to pay maintenance and cure benefits to Mr. Blanchard following the incident complained of.

    g)     Captain Ronald Campana - Captain Campana will testify as an expert in the field of marine operations / marine safety regarding his report and findings after investigating the accident made the subject matter of this litigation.

    h)     Ms. Stephanie Chalfin - Ms. Chalfin will testify as a vocational rehabilitation expert, regarding plaintiff's pre-accident employment, and post-accident employability and vocational aptitude.

    i)     G. Randolph Rice, Ph.D. - Dr. Rice will testify as an expert economist, regarding plaintiff's past lost earnings, benefits and meals, as well as any and all future lost earnings or earning capacity, benefits and meals.

    j)     Captain Richard Frenzel - Captain Frenzel may testify as a marine operations expert, as to the  facts and circumstances surrounding the accident, the safety precautions taken or not taken by defendants, the condition of the vessel and its operator, the cause of the accident, preventive measures, applicable rules and regulations, and any other opinions pertaining to the cause and prevention of the accident at issue.

k)    Louis Blanda, M.D. - Dr. Blanda will testify as to the injuries suffered by plaintiff, as well as any and all present and future medical treatment, future medical restrictions and/or limitations.

l)    Daniel Hodges, M.D. - Dr. Hodges will testify as to the injuries suffered by plaintiff, as well as any and all present and future medical treatment, future medical restrictions and/or limitations.

m)    Gordon Gregory Gidman, M.D. - Dr. Gidman will testify as to the injuries suffered by plaintiff, as well as any and all present and future medical treatment, future medical restrictions and/or limitations.

n)    Dr. Paul Fenn - Dr. Fenn will testify as to his evaluation of the injuries suffered by Chad Blanchard.

o)    A representative of Laborde Diagnostics - a duly authorized representative of Laborde Diagnostics will testify as to the imaging studies and results thereof taken of plaintiff.

p)    A representative of Our Lady of Lourdes Regional Medical Center - A duly authorized representative of Our Lady of Lourdes Regional Medical Center will testify as to the medical treatment rendered to plaintiff for the accident made the basis of this lawsuit.

q)    Any and all other health care providers, which have and/or may provide medical treatment to plaintiff during the course of this matter.

r)    Plaintiff reserves his right to add additional medical and/or other experts in accordance with the Court's Scheduling Order.

**B.    *Defendant, United States of America***

**United States' Will Call Witnesses**

a)    Captain Cary Lewis – Captain Lewis, then steersman mate aboard the M/V MISSISSIPPI, was on the navigation watch with Capt. Hendrix at all relevant times, and is expected to testify as to his operation of the MISSISSIPPI on the date in question, including the river and wind conditions, the approach to the ALLURA, and the navigation characteristics of the vessel. Captain Lewis is an employee of the United States.

b)    Arthur M. Reed, Ph.D. – By report and in person. Dr. Reed is Senior Scientist and Technical Consultant for High-Speed Ship Hydrodynamics, Naval Surface Warfare Center, Carderock Division, in Maryland. Dr. Reed is expected to explain the physics

of the waves generated by vessels moving over water, and specifically describe the characteristics and effects of the waves made by the MISSISSIPPI that arrived at the ALLURA. Based on calculations confirmed by observations, he has opined that the wakes reaching the ALLURA could not have caused Blanchard's fall.

c)    Bob A. Gisclair - Mr. Gisclair will testify for the defense as a licensed vocational rehabilitation expert regarding Blanchard's pre-accident employment and post-accident employability.

## United States' May-Call Witnesses

a)    Assistant Master Leo Hendrix – Captain Hendrix, together with Captain Cary Lewis, was on the navigation watch during all relevant times. Captain Hendrix will describe the M/V MISSISSIPPI and its mission on the Atchafalaya River on August 18, 2011. Captain Hendrix is an employee of the United States.

b)    Kenneth Boudreaux, Ph.D., by report, and in person via Stuart Wood or Dan Cliffe. Dr. Boudreaux will testify as an expert economist, regarding Blanchard's past lost earnings, benefits and meals, as well as any and all future lost earnings or earning capacity, benefits and meals.

c)    Gordon G. Gidman, M.D. - Dr. Gidman, an orthopedist, will testify about the injuries suffered by Blanchard, and provide opinions as to present and proposed future medical treatments, and a prognosis as to any future medical restrictions or limitations.

d)    Troy Simar, Jr. -  Mr. Simar was an employee of Laville Airboat and, on August 18, 2011, operated the crew boat that retrieved the ALLURA's master.  Mr. Simar will testify about his crew boat's encounter with the M/V MISSISSIPPI.

e)    Captain Harris Knott - Captain Knott was the ALLURA's master. Captain Knott will testify that his encounter with M/V MISSISSIPPI aboard Mr. Simar's crew boat. Captain Knott will also testify that he found no damage to the ALLURA or its lines as a result of its alleged wake encounter.

## C.    *Defendant, Stallion Oilfield Services, Ltd.*

## Stallion Will Call Witnesses

a)    Troy Simar - Mr. Simar will testify as to his knowledge regarding the speed, motion, and wake being created by the M/V MISSISSIPPI on the date of accident.

b)    Captain Harris Knott - Captain Knott will testify regarding the mooring of the M/V ALLURA, and the movement, speed, and wake being created by the M/V MISSISSIPPI on the date of accident.

    c)    Ronnie Powell - Mr. Powell will testify regarding his knowledge of the accident.

    d)    Captain Ronald Campana - Captain Campana will testify as an expert in the field of marine operations / marine safety regarding his report and findings after investigating the facts of the accident made the subject matter of this litigation.

    e)    Bob A. Gisclar - Mr. Gisclair will testify as a licensed vocational rehabilitation expert, regarding plaintiff's pre-accident employment, and post-accident employability.

    f)    Any witness listed by any other party.

**Stallion May-Call Witnesses**

    a)    Dr. Kenneth Boudreaux, Ph.D., by report, and in person via Stuart Wood or Dan Cliffe - Dr. Boudreaux will testify as an expert economist, regarding plaintiff's past lost earnings, benefits and meals, as well as any and all future lost earnings or earning capacity, benefits and meals.

    b)    Jack Hoyle – will testify to the maintenance and cure benefits paid to Plaintiff.

    c)    Dr. Gordon Gregory Gidman, M.D. - Dr. Gidman will testify as to the injuries suffered by plaintiff, as well as any and all present and future medical treatment, future medical restrictions and/or limitations.

**8)**    **Exhibits:**

    ***A.***    ***Plaintiff, Chad Blanchard***

    1)    Tax returns and earnings information of plaintiff, Chad Blanchard;

    2)    Boat logs from M/V ALLURA;

    3)    Accident report of Stallion Offshore, Ltd. regarding the accident of Chad Blanchard;

    4)    Photographs taken of the M/V ALLURA;

    5)    Photographs of the M/V MISSISSIPPI;

    6)    Vessel specifications for the M/V MISSISSIPPI;

    7)    Vessel specifications for the M/V ALLURA;

    8)    Log books from the M/V MISSISSIPPI for the relevant dates;

    9)    U.S. Coast Guard licenses of Captains Hendrix and Lewis;

    10)    Excel spreadsheets provided by the United States of America detailing the AIS coordinates and position data of the M/V MISSISSIPPI and M/V ALLURA;

11)    Speed graphs and travel information of the M/V MISSISSIPPI provided by the United States of America in discovery;

12)    Photographs taken of the vessel inspection of the M/V ALLURA;

13)    Chart maps and plotted coordinates of the M/V MISSISSIPPI as it traversed the Atchafalaya River;

14)    Chart maps used during the discovery deposition of the various witnesses to document the area of the accident, and the positions of the vessels;

15)    Medical records and bills of Chad Blanchard from the following providers:

    a)    Dr. Louis C. Blanda;
    b)    Dr. Gordon Gregory Gidman;
    c)    Dr. Daniel L. Hodges;
    d)    Dr. Steven K. Staires;
    e)    Falcon Pharmacy, LLC;
    f)    Guilbeau's Thrifty Way;
    g)    Laborde Diagnostics;
    h)    Lourdes Imaging/Our Lady of Lourdes Regional Medical Center;
    i)    Lafayette Surgical Specialty Hospital;
    j)    Moreau Physical Therapy;
    k)    Ochsner St. Anne General Hospital;
    l)    Physical Therapy Clinic of Carencro; and
    m)    Sunset Pharmacy;

16)    Medical expense summary of Chad Blanchard;

17)    Report of Stephanie P. Chalfin, M.S.;

18)    Report of Randolph G. Rice;

19)    United States Coast Guard documents regarding Chad Blanchard's captain's license;

20)    Report of Captain Ronald L. Campana;

21)    Report of Arthur M. Reed, Ph.D.;

22)    Report of Gordon Gregory Gidman, M.D.; and

23)    Report of Dr. Paul Fenn.

**B.    _Defendant, United States of America_**

1)    M/V MISSISSIPPI Navigation log for August 18, 2011 with declaration;

2)      Certified AIS data from the U.S. Coast Guard, for the M/V MISSISSIPPI and the M/V ALLURA;

3)      Map No. 23, 2007 Navigation Maps, Atchafalaya River System and Outlets to Gulf of Mexico, U.S. Army Corps of Engineers, from the depositions of Harris Knott and Troy Simar, Jr.;

4)      Coast Guard certified graphic representations and map overlays of the AIS data;

5)      Photographs of the M/V MISSISSIPPI;

6)      Photographs of the M/V ALLURA;

7)      Photographs of the M/V ALLURA vessel inspection;

8)      Drawings of mooring configurations from depositions of Chad Blanchard and Harris Knott;

9)      Deposition of Plaintiff Chad Patrick Blanchard (Aug. 12, 2013) (excerpts and exhibits);

10)     United States' Interrogatories Nos.7, 8, and 9 to Blanchard and his Answers thereto;

11)     Merchant Mariner Documents for Captains Hendrix and Lewis;

12)     USCG Certificate of Inspection for M/V MISSISSIPPI;

13)     Expert Report of Dr. Arthur M. Reed, December 2013, Revised May 2014, and exhibits contained therein;

14)     PowerPoint presentation by Dr. Reed;

15)     Tax returns and earnings information of plaintiff, Chad Blanchard;

16)     Wage records and time sheets and payment information from Stallion;

17)     Accident report of Stallion Offshore, Ltd.;

18)     Chad Blanchard's USCG Licenses;

19)     Records of Gordon Gregory Gidman, M.D.;

20)     Expert report of Bob A. Gisclair, vocational/rehabilitation expert; and

21)     Expert report of Dr. Kenneth Boudreaux, economist.

**United States' May-Use Exhibits**

1)      Sheet 61, 2006 Hydrological Survey, Atchafalaya River, U.S. Army Corps of Engineers (to explain changes in charted river mileage after 1998);

18

2)      Any other exhibits used by any other party; and

3)      Any other exhibits used in any deposition in this matter.

## C.      *Defendant, Stallion Oilfield Services, Ltd.*

1)      Excerpts from Stallion's Safety Manual;

2)      Tax returns and earnings information of plaintiff, Chad Blanchard;

3)      Wage Records/Time sheets and payment information from Stallion;

4)      Accident report of Stallion Offshore, Ltd.;

5)      Boat logs from M/V ALLURA;

6)      Photographs taken of the M/V ALLURA;

7)      Photographs taken of the vessel inspection of the M/V ALLURA;

8)      Vessel specifications for the M/V ALLURA;

9)      Log books from the M/V MISSISSIPPI for the relevant dates;

10)     Photographs of the M/V MISSISSIPPI;

11)     Vessel specifications for the M/V MISSISSIPPI;

12)     Excel spreadsheets provided by the United States of America detailing the AIS coordinates and position data of the M/V MISSISSIPPI and M/V ALLURA;

13)     Speed graphs and travel information of the M/V MISSISSIPPI provided by the United States of America in discovery;

14)     Chart maps and plotted coordinates of the M/V MISSISSIPPI as it traversed the Atchafalaya River;

15)     Chart maps used during the discovery deposition of the various witnesses to document the area of the accident, and the positions of the vessels;

16)     U.S. Coast Guard licenses of Captains Hendrix and Lewis;

17)     United States Coast Guard documents regarding Chad Blanchard's captain's license;

18)     Records of Gordon Gregory Gidman, M.D.;

19

19)    Report of Captain Ronald L. Campana;

20)    Vocational Report of Bob A. Gisclair;

21)    Report of Dr. Kenneth Boudreaux, economist;

22)    Recapitulation of maintenance and cure expenses paid by Stallion; and

23)    Any exhibit listed by any other party.

**Possible Exhibits**

1)    Disbursement ledger of maintenance and cure payments;

2)    Check stubs & employment records from previous employers:

    a)    Calliou Island Towing; and
    b)    Cenac Towing;

3)    Surveillance of Terrell Miceli Investigations; and

4)    Facebook Social Media Excerpts.

**9)    Objections to Witness and Exhibit Lists:**

    ***A.    Plaintiff, Chad Blanchard***

None.

    ***B.    Defendant, United States of America***

The United States respectfully objects:

1)    To portions of the vessel log entries for the M/V ALLURA made by Captain Harris Knott that are hearsay; and

2)    To portions of any written statements by Captain Harris Knott to the extent they contain hearsay.

The United States objects to the testimony of two witnesses, Captain Harris Knott and Troy Simar, Jr., concerning their passing the M/V MISSISSIPPI in an crew boat upriver from the ALLURA, which occurred around a bend and two miles away.

### C.    *Defendant, Stallion Oilfield Services, Ltd.*

None as to those listed by Plaintiff.

**10)    For Bench Trials:**

The parties will submit bench books prior to seven (7) days before trial.

**11)    For Jury Trials:**

Not applicable.

**12)    Editing Trial Depositions/Filing Objections:**

The parties will submit trial depositions ten (10) days prior to the trial.

**13)    Counsel Affirmations:**

Counsel affirms that they are familiar with visual presenter and its operation. Counsel affirms that the final good faith settlement negotiations have been engaged in prior to the pre-trial conference. Counsel affirms that they understand that failure to comply with the requirements of the Federal Rules of Civil Procedure, the Scheduling Order, and other Orders of this Court, will risk the imposition of sanctions provided for in the Federal Rules of Civil Procedure. Finally, counsel affirms that they do not need handicap provisions at the trial of this matter.


|          /s/ Jason M. Welborn          |          5/30/14          |
| --- | --- |
| **JASON M. WELBORN** | **DATE** |

**JOSEPH F. GAAR, JR.**
**WILLARD P. SCHIEFFLER**
**LUCAS S. COLLIGAN**
**JACOB H. HARGETT**


|          /s/ Stephen M. Ketyer          |          5/30/14          |
| --- | --- |
| **STEPHEN M. KETYER** | **DATE** |

**JENNIFER BAILEY FREDERICK**


|          /s/ Scott A. Soule          |          5/30/14          |
| --- | --- |
| **SCOTT A. SOULE** | **DATE** |

**JOSEPHINE A. HOOD**

21