UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| CHAD BLANCHARD | CIVIL ACTION NO: 12-3140 |
| VERSUS | |
| | JUDGE DOHERTY |
| THE UNITED STATES OF AMERICA THROUGH ITS AGENCY THE UNITED STATES ARMY CORPS OF ENGINEERS | MAGISTRATE JUDGE HANNA |

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

NOW INTO COURT, through undersigned counsel, comes Defendant, Stallion Oilfield Services, Ltd. ("Stallion"), who respectfully submits proposed findings of fact and conclusions of law, in accordance with this Court's February 19, 2014 scheduling order.

### FINDINGS OF FACT

1.

At all material times hereto, Plaintiff Chad Blanchard was employed by Stallion as a contract hand, working upon various vessels at varying rates of pay. Stallion is a foreign corporation, authorized to do and doing business within the state of Louisiana. On the date of the accident in question, August 18, 2011, Plaintiff was assigned to the M/V ALLURA as a deckhand; the M/V ALLURA is a two man push boat owned and operated by Stallion. The parties stipulate that Plaintiff has status as a Jones Act seaman, with a connection to the M/V ALLURA that was substantial in terms of both its nature and duration. Thus, this claim is properly brought pursuant to the Jones Act, 46 U.S.C.A. § 30104, *et seq.*, and the General Maritime Law, 28 U.S.C.A. §1333, *et seq.*

1

1916403-1

2.

Following an accident on August 18, 2011, for which Plaintiff sustained alleged injuries, he brought suit against Stallion in their capacity as Employer for maintenance and cure, and alleged negligence. Plaintiff included as a defendant the United States of America, through the United States Army Corp of Engineers, ("USA"). Jurisdiction against the USA is proper pursuant to the Public Vessels Act, 46 U.S.C.A. § 31101-31113. At all material times, the USA was owner of the M/V MISSISSIPPI, a large triple screw push vessel, operated on the date of the incident by the employees of the United States Army Corp. of Engineers.

3.

On August 18, 2011, the M/V ALLURA, under the direction of Captain Harris Knott, was properly and securely moored at the Hilcorp Lake Chicot dock, in the Atchafalaya River, Mile 84, in St. Martin Parish, Louisiana. Although a shallow inlet existed just below the Hilcorp Lake Chicot dock, Captain Knott determined the Atchafalaya was too low to safely moor the ALLURA in the inlet. Mooring the ALLURA in the inlet would have required Captain Knott to "wheel-wash" into the inlet, as less water existed in the inlet than the draft of the ALLURA.

4.

After the Plaintiff, Chad Blanchard, securely moored the M/V ALLURA to the dock, Captain Harris Knott departed the ALLURA on a crewboat captained by Troy Simar. Plaintiff elected to remain aboard the ALLURA for the night. As this was disclosed to Captain Knott, it also factored into his decision to moor at the dock as there was no radio and cell phone coverage in the inlet.

5.

The crewboat, operated by Troy Simar and carrying Captain Knott, was traveling northbound, towards Butte La Rose, when it met the M/V MISSISSIPPI, operated by the USA, on its annual low water inspection trip. The crewboat was forced to stop and maneuver to the right-most side of the Atchafalaya River, in order to ride out the five to six feet wake produced by the M/V MISSISSIPPI. The unsafe speed and resulting wake thrown by the M/V MISSISSIPPI, and the failure to look-out for smaller vessels subject to turmoil from the massive tug, is a violation of the Inland Navigational Rules, including Rule 5, Lookout, and Rule 6, Safe Speed.

6.

Thereafter, the M/V MISSISSIPPI continued southbound, and only infinitesimally reduced her speed prior to overtaking the moored M/V ALLURA, again in violation of Rule 5 and 6. The upset from the MISSISSIPPI's wake caused Plaintiff to fall down the stairwell while he was descending into the engine room to complete a task, suffering injuries for which Stallion has paid maintenance and cure. The wake from the M/V MISSISSIPPI was the direct and only cause of the accident complained of and injuries suffered as a result.

7.

Stallion has paid and continues to pay maintenance and cure. Maintenance benefits of $28,732 have been paid since January 2013, and Cure has been paid amounting to $42,794.44, current as of May 27, 2014. Stallion has provided Plaintiff with total benefits of $71,526.44 and continuing, in addition to $23,023.92 reimbursed to Zurich, for a total of $94,550.36.

1916403-1

8.

Initially, Stallion's workers compensation carrier (Zurich) handled this claim, and appointed initial defense counsel in Texas. Subsequently the claim transitioned to undersigned counsel once P & I underwriters began handling. The new claims team conducted its investigation, as required by law[1], into several notable issues, including 1) Plaintiff's Jones Act status, as he was not a Stallion employee, but a contract hand; 2) whether Dr. Gidman or Dr. Blanda was Plaintiff's free choice of physician; 3) whether the medical complaints were reasonably related to the subject incident; and 4) what the surveillance revealed about Plaintiff's actual restrictions and capabilities, among other issues. Once the investigation was completed, Plaintiff was immediately brought current on his maintenance, any and all outstanding medical bills were resolved, and all medical treatment requested from that point forward has been approved.

9.

Plaintiff has reached maximum cure for any alleged lumbar condition pursuant to the written report of Dr. Gidman, who examined Plaintiff on May 7, 2014. He does not require surgical intervention, additional lumbar epidural steroid injections, or any formal therapy. Plaintiff has reached maximum cure for any alleged shoulder issues, as neither the medical reports of Dr. Gidman nor Dr. Blanda reveal current issues or contemplate treatment. Plaintiff underwent a right ulnar nerve transposition, and should reach maximum cure between December 2014 and February 2015, according to the projection of Dr. Gidman. Plaintiff can currently

---

[1] An Employer has an affirmative duty to investigate any claim for maintenance, cure, and unearned wages, resolving doubts to entitlement in favor of the seaman. *Vaughn v. Atkinson*, 369 U.S. 527 (1962). However, if a genuine issue of material fact exists as to plaintiff's entitlement, the employer is not obligated to pay maintenance and cure pending trial. *Guerra v. Arctic Storm, Inc.*, 2004 AMC 2319 (W.D. Wa. 2004).

1916403-1

perform light work with the upper right extremity, and an FCE is warranted to establish additional capabilities.

10.

Plaintiff's annual income base at the time of the incident was $35,760.00. Plaintiff earned a total of $16,390.00 while working for Stallion, over a span of five months. Plaintiff did not have a set schedule and only worked on an as-needed basis. His payments ranged from $320 for a pay period to $1,750, and his daily rate ranged from $160/day to $250/day, depending on the vessel assignment and his job duties.

## CONCLUSIONS OF LAW

1.

As a result of its negligence, the USA is liable to Plaintiff for the losses sustained, if any, and is further liable to Stallion for the maintenance and cure benefits it expended due to the negligence of the USA. Defendants failed to comply with its duty[2] to take adequate precautions in navigating the Atchafalaya at a safe speed to prevent damages resulting from their excessive wake; the USA's actions fell below the standard of care.[3]

2.

Defendant USA further violated a statutory duty by failing to keep a proper lookout and failing to proceed at a safe speed,[4] thus giving rise to the presumption, under *The Pennsylvania*

---

[2] *See Creole Shipping, Ltd. v. Diamandis Pateras, Ltd.*, 410 F.Supp. 313, 316 (S.D. Ala. 1976), aff'd 554 F.2d 1348 (5th Cir. 1997) ( finding that a vessel causing injury to others by her swell must be held responsible for any failure to appreciate the reasonable effect of her own speed and motion through the water at the particular place and under the particular circumstances where the injury occurred). *See also Gregg v. Weeks Marine*, CIV. A. 99-1586, 2000 WL 798493 (E.D. La. June 21, 2000) (A moving vessel owes a duty of reasonable care to appreciate the reasonable effect of its wake, and take adequate precautions to avoid creating unusual swells that may injure others).
[3] *United States v. Caroll Towing Co.*, 159 F.2d 169 (2d Cir. 1947); *In re Signal Int'l LLC*, 579 F.3d 478 (5th Cir. 2009).
[4] Rule 5 and 6 of the 72 COLREGS, codified at 33 C.F.R. § 83.05.

5

Rule, that the statutory violations were the cause of Plaintiff's injury.[5] As a result of this presumption of causation, the burden is on the USA to show that its violations could not have been the cause of the injury to Plaintiff. Here, the probative evidence established that a proper lookout and proceeding at a safe speed when passing the M/V ALLURA would have prevented the excessive wake produced by the M/V MISSISSIPPI, and the subsequent fall and alleged injuries sustained by Plaintiff. Consequently, the USA has failed to carry the burden imposed by *The Pennsylvania* Rule, and the presumption of causation must stand.

3.

Stallion's mooring of the M/V ALLURA and Plaintiff's decision to remain by himself aboard the M/V ALLURA while the tug was in off-duty status does not constitute negligence or contributory negligence.[6] Stallion did not breach any duty of care owned to Plaintiff. Captain Knott made a reasonable and informed decision to moor the M/V ALLURA at the Lake Chicot dock, a facility permitted by the USACOG, and allowed Plaintiff to remain aboard the M/V ALLURA, as is customary for companies engaged in construction/inland oilfield trade. Moreover, Captain Knott determined the mooring location proper in order to provide Plaintiff with cell phone service, so that help could be summoned if something occurred. Plaintiff has

---

[5] The Fifth Circuit has established that the Pennsylvania Rule can be applied to personal injury maritime claims, such that where a vessel violates any statutory duty or rule of the road, to exculpate itself from liability, it must prove not only that the violation did not cause the accident, but could not have contributed to the accident. *See, e.g. United States v. Nassau Marine Corp.*, 778 F.2d 111 (5th Cir. 1985); *see also Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465 (5th Cir. 1991) (holding that the Pennsylvania Rule applies to marine casualties other than collisions, and stating that the rule has been "reformulated to apply to any 'statutory violator' who is a 'party to a maritime accident.'") (citing *Sheridan Transp. Co. v. United States*, 834 F.2d 467, 476 (5th Cir. 1987) (*Sheridan I*) *appeal after remand*, 897 F.2d 795, 799 (5th Cir. 1990)(Sheridan II)); and *Reyes v. Vantage S.S. Co.*, 558 F.2d 538 (5th Cir. 1977).

[6] To recover damages against his employer, a seaman must prove that the Employer breached its duty of care owed to the seaman; ordinary prudence under the circumstances is the standard of the duty of care owed. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335-336 (5th Cir. 1997)(en banc); *see also Marvin v. Central Gulf Lines Inc.*, 554 F.2d 1295, 1299 (5th Cir.), *cert. denied*, 434 U.S. 1035 (1978) ("A Jones Act employer is not an insurer of a seaman's safety; the mere occurrence of an injury does not establish liability.")

testified that the result of Captain Knott remaining on board would have been a second injury. Accordingly, Stallion did not breach any duty to Plaintiff.

4.

As a result of the fault and negligence of the USA, Stallion initiated maintenance and cure payments to Plaintiff, and Stallion is entitled to indemnification from those expenses rendered, including interest.[7] As of May 27, 2014, Stallion had tendered to Plaintiff a total of $94,550.36 in maintenance and cure benefits. As a result of the fault and negligence of the USA, Stallion is entitled to recover from the USA by way of indemnity and/or contribution and/or reimbursement and/or recovery as a matter of law for any sums which Stallion may be obligated to pay to the Plaintiff in the main demand by judgment and/or settlement and/or otherwise, to include interest, and specifically, all costs, attorneys' fees, maintenance, cure, and expenses incurred in the defense of this action, and for all such general equitable relief as the nature of the case may permit.[8]

5.

Employer's delay in paying maintenance and cure does not rise to the level of "willful and recalcitrant," arbitrary, or capricious, and Plaintiff was not prejudiced and did not suffer any additional injury by any such delay.[9] Accordingly, punitive damages may not be asserted against

---

[7] The Fifth Circuit has repeatedly recognized the right of a vessel operator compelled to pay maintenance and cure to indemnity from the tortfeasor responsible for the injury. *See, e.g. Savoie v. LaFourche Boat Rentals, Inc.* 672 F.2d 722 (5th Cir. 1980); *see also Gautheir v. Crosby Marine Services, Inc.*, 576 F.Supp. 681 (E.D. La. 1980), aff'd 752 F.2d 1085 (5th Cir. 1985).
[8] *See Savoie v. LaFource Boat Rentals, Inc.*, 672 F.2d 722 (5th Cir. 1980).
[9] In order for punitive damages to be asserted against Employer, the delay must be a "willful and recalcitrant" failure to pay maintenance and cure. *See Vaughan v. Atkinson*, 369 U.S. 527 (1962); *see also Atlantic Sounding Co. v. Townsend*, 557 U.S. ___ ( 2009).

Stallion. Additionally, Stallion's delay in payment was not unreasonable, but a result of an investigation conducted as required by law, thus no compensatory damages are due.[10]

Respectfully submitted,

BLUE WILLIAMS, L.L.P.

/s/ Scott A. Soule

---

SCOTT A. SOULE – Bar #20379
ssoule@bluewilliams.com
JOSEPHINE A. HOOD- Bar #33894
jhood@bluewilliams.com
1060 West Causeway Approach
Mandeville, LA  70471
Telephone:  (504) 830-4977
Facsimile:  (504) 849-3883
ATTORNEYS FOR DEFENDANT,
STALLION OILFIELD SERVICES, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May, 2014, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to opposing counsel by operation of the court's electronic filing system. I also certify that I have mailed by United States Postal Service this filing to all non-CM/ECF participants.

/s/ Scott A. Soule

---

Scott A Soule

---

[10] *Snyder v. L & M Botruc Rental, Inc.*, 924 F. Supp. 2d 728, 734 (E.D. La. 2013), citing *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir.1995); *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518–20 (5th Cir.1986). *See also Guerra v. Arctic Storm, Inc.*, 2004 AMC 2319 (W.D. Wa. 2004) (for the proposition that if a genuine issue of material fact exists, an employer does not even have to pay maintenance and cure prior to trial.)