UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

CHAD BLANCHARD                              CIVIL ACTION NO: 12-3140

VERSUS
                                            JUDGE DOHERTY
THE UNITED STATES OF AMERICA
THROUGH ITS AGENCY THE UNITED
STATES ARMY CORPS OF ENGINEERS              MAGISTRATE JUDGE HANNA

### TRIAL BRIEF OF DEFENDANT, STALLION OILFIELD SERVICES, LTD.

NOW INTO COURT, through undersigned counsel, comes Defendant, Stallion Oilfield Services, Ltd., ("Stallion") who respectfully submits their trial brief, in accordance with this Court's February 19, 2014 scheduling order.

### STATEMENT OF FACTS

**I.   Parties and Allegations**

At all material times hereto, Plaintiff Chad Blanchard was employed by Stallion as a contract hand, working upon various vessels at varying rates of pay.  Stallion is a foreign corporation, authorized to do and doing business within the state of Louisiana.  On the date of the accident in question, August 18, 2011, Plaintiff was assigned to the M/V ALLURA as a deckhand; the M/V ALLURA is a two man push boat owned and operated by Stallion.  The parties stipulate that Plaintiff has status as a Jones Act seaman, with a connection to the M/V ALLURA that was substantial in terms of both its nature and duration.  Thus, this claim is properly brought pursuant to the Jones Act, 46 U.S.C.A. § 30104, *et seq.*, and the General Maritime Law, 28 U.S.C.A. §1333, *et seq.*

Following an accident on August 18, 2011, as a result of which Plaintiff sustained alleged injuries, he brought suit against Stallion, in its capacity as Employer, for maintenance and cure, and damages as a result of Stallion's negligence. Plaintiff included as a defendant the United States of America, through the United States Army Corp of Engineers ("USA"). Jurisdiction against the USA is proper pursuant to the Public Vessels Act, 46 U.S.C.A. § 31101-31113. At all material times, the USA was owner of the M/V MISSISSIPPI, a large triple screw push vessel, operated on the date of the incident by the employees of the United States Army Corp of Engineers.

Thereafter, Stallion and the USA filed competing cross-claims.

## II.     Statement of the Events of August 18, 2011

On August 18, 2011, the M/V ALLURA, under the direction of Captain Harris Knott, was properly and securely moored at the Hilcorp Lake Chicot dock, in the Atchafalaya River, Mile 84, in St. Martin Parish, Louisiana. Although a shallow inlet existed just below the Hilcorp Lake Chicot dock, Captain Knott determined the Atchafalaya was too low to safely moor the ALLURA in the inlet. Mooring the ALLURA in the inlet would have required Captain Knott to "wheel-wash" into the inlet, as less water existed in the inlet than the draft of the ALLURA.

After the Plaintiff, Chad Blanchard, securely moored the M/V ALLURA to the dock, Captain Harris Knott departed the ALLURA on a crewboat captained by Troy Simar. Plaintiff elected to remain aboard the ALLURA for the night. As this was disclosed to Captain Knott, it also factored into his decision to moor at the dock, rather than the inlet, as there was no radio and cell phone coverage in the inlet.

The crewboat, operated by Troy Simar and carrying Captain Knott, was traveling northbound, towards Butte La Rose, when it met the M/V MISSISSIPPI, operated by the USA,

on its annual low water inspection trip. The crewboat was forced to stop and maneuver to the right-most side of the Atchafalaya River, in order to ride out the five- to six-foot wake produced by the M/V MISSISSIPPI. The unsafe speed and resulting wake thrown by the M/V MISSISSIPPI, as well as the vessel's failure to look-out for smaller vessels subject to turmoil from the massive tug, is a violation of the Inland Navigational Rules, including Rule 5, Lookout, and Rule 6, Safe Speed.

Thereafter, the M/V MISSISSIPPI continued southbound, and only infinitesimally reduced her speed prior to overtaking the moored M/V ALLURA, again in violation of Rules 5 and 6 of the Inland Navigational Rules. The upset from the MISSISSIPPI's wake caused Plaintiff to fall down the stairwell while he was descending into the engine room to complete a task, suffering injuries for which Stallion has paid maintenance and cure. The wake from the M/V MISSISSIPPI was the direct and only cause of the accident complained of and injuries suffered as a result.

Plaintiff suffered alleged physical injuries to his lower back, right shoulder, and right elbow, for which Stallion has paid maintenance and cure benefits pursuant to Plaintiff's status as Jones Act seaman. Stallion asserts, and has filed a cross-claim, that they are entitled to indemnification from the USA, who was at sole fault in the injury to Plaintiff, due to their failure to exercise proper and due care in the operation of the M/V MISSISSIPPI.

## **LEGAL ANALYSIS**

Plaintiff's proposed pre-trial order asserts against Stallion two separate issues requiring defense. First, Plaintiff asserts that Employer was negligent for failing to properly moor and man the M/V ALLURA, and that the combined negligence of Stallion and the USA caused Plaintiff's injuries; and second, that Employer arbitrarily and capriciously withheld maintenance and cure

benefits. Stallion denies the allegations that they were negligent, instead asserting that the USA, as a result of its sole fault and negligence, is liable to Plaintiff for the losses, if any, and is further liable to Stallion for the maintenance and cure benefits already expended.

I.     **Liability of Stallion**

To recover damages against his employer, a seaman must prove that the Employer breached its duty of care owed to the seaman; ordinary prudence under the circumstances is the standard of the duty of care owed.[1] Importantly, a Jones Act employer is not an insurer of a seaman's safety, and the mere occurrence of an injury does not establish fault.[2]

a. **Failure to Properly Moor**

Plaintiff asserts Employer was negligent in the mooring of the M/V ALLURA at the Hilcorp Lake Chicot dock, rather than a shallow inlet which existed just below this dock. Specifically, Plaintiff states that Captain Knott improperly moored the vessel in the body of the Atchafalaya River when a protective cove was available. However, it was not possible or prudent for Captain Knott to moor the M/V ALLURA in the inlet. At trial, Captain Knott will testify that although a shallow inlet existed just southbound of the pilings that the ALLURA was moored to, the Atchafalaya was too low for the M/V ALLURA to be moored in the inlet on that particular date, and would have required him to "wheel-wash" into the inlet; less water existed in the inlet than the draft of the ALLURA. Captain Knott made an informed and reasonable decision to moor the ALLURA to the pilings of the Hilcorp Lake Chicot dock, rather than the inlet. Further, the M/V ALLURA was moored in a location where Plaintiff would have cell-phone service to ensure he was able to communicate should the need for assistance arise.

---

[1] *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335-336 (5th Cir. 1997)(en banc).
[2] *Marvin v. Central Gulf Lines Inc.*, 554 F.2d 1295, 1299 (5th Cir.), *cert. denied*, 434 U.S. 1035 (1978).

4

Accordingly, the mooring of the ALLURA did not fall below the standard of care, as it was prudent in the circumstances which existed at the time.

### b. Failure to Properly Man

Plaintiff asserts that Employer's failure to have a second person aboard the M/V ALLURA to act as a lookout, or render assistance, created liability against Employer directly for the accident and injuries of which Plaintiff complains. Plaintiff is unable to articulate any specific rule, issued by United States Coast Guard or otherwise, that would require a look-out while an uninspected tow is moored overnight. Even Captain Frenzel, Plaintiff's expert, admitted in his recent deposition that the particular rule cited in his expert report, USCG Rule 5, requires a vessel to be underway, and is not applicable to the situation at hand.

Further, Captain Ron Campana, Stallion's liability expert, will testify at trial that no such rule exists requiring a look-out on a moored vessel. Accordingly, the manning of the M/V ALLURA on the date of the subject accident did not violate any statutory or legal duty to Plaintiff, thus no fault can be attributed to Stallion. Instead, expert testimony will reveal that the cause of the accident was the negligent operation of the M/V MISSISSIPPI by the USA.

## II. Negligence of the USA

### a. USA's Breach of Duty

The evidence presented at trial will show that the USA negligently operated the M/V MISSISSIPPI, creating excessive swell which in turn injured the Plaintiff. According to the court's holding in *Gregg v. Weeks Marine*,[3] "a moving vessel owes a duty of reasonable care to appreciate the reasonable effect of its wake and to take reasonable precautions to avoid creating unusual swells that may injure others."[4] Whether a vessel is in fact responsible for damages

---

[3] CIV. A. 99-1586, 2000 WL 798493 (E.D. La. June 21, 2000).
[4] *Id.* at *4.

created by her swells depends on the facts and circumstances of each particular case,[5] but "a vessel causing injury to others by her swell must be held responsible for any failure to appreciate the reasonable effect of her own speed and motion through the water at the particular place and under the particular circumstances where the injury occurred."[6]

In this instance, the facts and circumstances presented at trial, particularly the eyewitness testimony of Captain Knott and Troy Simar, who will testify that the M/V MISSISSIPPI was throwing a wake of better than five to six feet, will prove that the USA breached their duty of reasonable care by failing to operate the M/V MISSISSIPPI at a safe speed, even after recognizing the presence of the M/V ALLURA, and that this negligence was the sole cause of the accident and injuries suffered by Plaintiff.

### b. *The Pennsylvania* Rule

In addition, the statutory violations committed by the USA in its negligent operation of the M/V MISSISSIPPI give rise to a presumption of causation under *The Pennsylvania* Rule. *The Pennsylvania* Rule states that when a party violates a statutory duty, there is a presumption that this violation, if not the sole cause, was at least contributory to the resulting injury.[7] In order to rebut this strong presumption, Defendants must show that the violation of the rule could not have been one of the causes of the injury.[8]

---

[5] *Gregg v. Weeks Marine, Inc.*, CIV. A. 99-1586, 2000 WL 798493 at *4 (E.D. La. June 21, 2000).
[6] *Moran v. The Georgie May*, 164 F. Supp. 881, 884 (S.D. Fla. 1958).
[7] *The Pennsylvania*, 86 U.S. 148 (1874). The Fifth Circuit has established that *The Pennsylvania* Rule can be applied to personal injury maritime claims. *See, e.g. United States v. Nassau Marine Corp.*, 778 F.2d 111 (5th Cir. 1985); *see also Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465 (5th Cir. 1991) (holding that the Pennsylvania Rule applies to marine casualties other than collisions, and stating that the rule has been "reformulated to apply to any 'statutory violator' who is a 'party to a maritime accident.'") (citing *Sheridan Transp. Co. v. United States*, 834 F.2d 467, 476 (5th Cir. 1987) (*Sheridan I*) appeal after remand, 897 F.2d 795, 799 (5th Cir. 1990)(Sheridan II)); and *Reyes v. Vantage S.S. Co.*, 558 F.2d 538 (5th Cir. 1977).
[8] *Atlantic Mut. Ins. Co. v. ABC Ins. Co.*, 645 F.2d 528 (5th Cir. 1981).

6

In this instance, the USA violated two Inland Navigational Rules; specifically, the USA failed to keep a proper lookout,[9] and failed to proceed at a safe speed.[10] These statutory violations give rise to the presumption, under *The Pennsylvania* Rule, that the statutory violations were the cause of Plaintiff's injury.[11] As a result of this presumption of causation, the burden is on the USA to show that its violations could not have been the cause of the injury to Plaintiff. Here, the probative evidence will establish that a proper lookout and proceeding at a safe speed when passing the M/V ALLURA would have prevented the excessive wake produced by the M/V MISSISSIPPI, and the subsequent fall and alleged injuries sustained by Plaintiff. Consequently, the USA has failed to carry the burden imposed by *The Pennsylvania* Rule, and the presumption of causation must stand.

### c. Indemnity Owed to Stallion

The Fifth Circuit has repeatedly recognized the right of a vessel operator compelled to pay maintenance and cure to indemnity from the tortfeasor responsible for the injury.[12] As a result of the fault and negligence of the USA, Stallion initiated maintenance and cure payments to Plaintiff, and Stallion is entitled to indemnification from those expenses rendered, including interest.

As of May 27, 2014, Stallion had tendered to Plaintiff a total of $94,550.36 in maintenance and cure benefits. As a result of the fault and negligence of the USA, Stallion is entitled to recover from the USA by way of indemnity and/or contribution and/or reimbursement and/or recovery as a matter of law for any sums which Stallion may be obligated to pay to the Plaintiff in the main demand by judgment and/or settlement and/or otherwise, to include interest,

---

[9] Rule 5 of the Inland Navigational Rules, codified at 33 C.F.R. § 83.05.
[10] Rule 6 of the Inland Navigational Rules, codified at 33 C.F.R. § 83.06.
[11] *See* FN 5, *supra*.
[12] *See, e.g. Savoie v. LaFourche Boat Rentals, Inc.* 672 F.2d 722 (5th Cir. 1980); *see also Gautheir v. Crosby Marine Services, Inc.*, 576 F.Supp. 681 (E.D. La. 1980), aff'd 752 F.2d 1085 (5th Cir. 1985).

1916837-1

and specifically, all costs, attorneys' fees, maintenance, cure, and expenses incurred in the defense of this action, and for all such general equitable relief as the nature of the case may permit.[13]

### III. Damages

#### a. Punitive and Compensatory Damages for Failure to Pay Maintenance and Cure

The United States Supreme Court has recently held that punitive damages are warranted in Jones Act claims where an employer willfully and wantonly disregards its maintenance and cure obligations.[14] In this instance, Plaintiff asserts that Employer failed to properly pay maintenance and cure, causing an unconscionable delay in receiving treatment and being provided for during his period of convalescence. Plaintiff asserts that his treatment was delayed "for the better part of the year." However, Stallion will prove at trial that any delay in payment of Plaintiff's maintenance and cure was justified under the law, and did not rise to the "willfull and wanton disregard" necessary for an award of punitive damages, or unreasonable, as necessary for an award of compensatory damages.

Once a shipowner receives a demand for maintenance and cure, it is under no obligation to begin payments immediately; rather, the shipowner may undertake a reasonable investigation into the claim asserted against it.[15] Thereafter,

> If the shipowner unreasonably rejects the claim after investigation, when in fact the seaman is due maintenance and cure, the owner becomes liable for maintenance and cure payments in addition to compensatory damages. If, by failing to pay, the shipowner has not only been unreasonable but has also been "callous and recalcitrant,

---

[13] *See Savoie v. LaFource Boat Rentals, Inc.*, 672 F.2d 722 (5th Cir. 1980).
[14] *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 415-416 (2009).
[15] *Snyder v. L & M Botruc Rental, Inc.*, 924 F. Supp. 2d 728, 734 (E.D. La. 2013), citing *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir.1995); *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518–20 (5th Cir.1986).

1916837-1

arbitrary and capricious, or willful, callous, and persistent," then the owner may also be liable for punitive damages and attorney's fees.[16]

Additionally, there is case law to support the proposition that if a genuine issue of material fact exists, an employer does not have to pay maintenance and cure prior to trial.[17]

Initially, the claim against Stallion was assigned to its workers' compensation carrier (Zurich), who appointed initial defense counsel in Texas. Subsequently, however, the claim was transitioned to Stallion's P & I underwriters, at which point this matter came under the care of undersigned counsel. At that point, an investigation, as required by law,[18] was conducted into several notable issues, including 1) Plaintiff's Jones Act status, as he was not a Stallion employee, but a contract hand; 2) whether Dr. Gidman or Dr. Blanda was Plaintiff's free choice of physician; 3) whether the Plaintiff's medical complaints were reasonably related to the subject incident; and 4) what the surveillance revealed about Plaintiff's actual restrictions and capabilities, among other issues. Once this reasonable investigation was completed, Plaintiff was immediately brought current on his maintenance, any and all outstanding medical bills were resolved, and all medical treatment requested from that point forward has been approved. Employer's delay, therefore, was the result of a reasonable investigation, and no compensatory damages are warranted. Additionally, Employer's delay in paying maintenance and cure does not rise to the level of "willful and wanton," arbitrary, or capricious, and Plaintiff was not prejudiced by any such delay; thus, no punitive damages may be awarded.

### b. Past and Future Wage Loss Claim

Plaintiff's annual income base at the time of the incident was $35,760.00. Plaintiff earned a total of $16,390.00 while working for Stallion, over a span of five months. Plaintiff has

---

[16] *Snyder*, 924 F.Supp. 2d at 734, quoting *Morales*, 829 F.2d at 1358.
[17] *Guerra v. Arctic Storm, Inc.*, 2004 AMC 2319 (W.D. Wa. 2004).
[18] *Vaughn v. Atkinson*, 369 U.S. 527 (1962).

9

1916837-1

testified that he did not have a set schedule and only worked on an as-needed basis. His payments ranged from $320 for a pay period to $1,750, and his daily rate ranged from $160/day to $250/day, depending on the vessel assignment and his job duties. Accordingly, expert economist Kenneth Boudreaux, Ph.D.'s report will show that Plaintiff's annual income cannot be calculated based upon the presumption that he earned a consistent $250.00/day.

### c. Maintenance and Cure

Plaintiff has reached maximum cure for any alleged lumbar condition pursuant to the written report of Dr. Gidman, who examined Plaintiff on May 7, 2014. He does not require surgical intervention, additional lumbar epidural steroid injections, or any formal therapy. Plaintiff has reached maximum cure for any alleged shoulder issues, as neither the medical reports of Dr. Gidman nor Dr. Blanda reveal current issues or contemplate treatment. Plaintiff underwent a right ulnar nerve transposition, and should reach maximum cure between December 2014 and February 2015, according to the projection of Dr. Gidman. Plaintiff can currently perform light work with the upper right extremity, and an FCE is warranted to establish additional capabilities.

## CONCLUSION

Stallion cannot be held responsible, and no negligence may be attributed, for Plaintiff's alleged injuries on August 18, 2011. Additionally, Stallion's slight delay in instating maintenance and cure benefits did not rise to a level sufficient for a finding of punitive or even compensatory damages. The accident was solely caused by the negligence of the USA, in failing to proceed at a safe speed, and in failing to keep a proper lookout. The USA has not met its burden under *the Pennsylvania* Rule of establishing that their statutory violations could not have caused the accident. Accordingly, Stallion is entitled to indemnification from the USA,

including maintenance and cure benefits already paid, and for any damages which Plaintiff is found to have sustained.

          Respectfully submitted,

          BLUE WILLIAMS, L.L.P.

          /s/ Scott A. Soule

          SCOTT A. SOULE – Bar #20379
          *ssoule@bluewilliams.com*
          JOSEPHINE A. HOOD- Bar #33894
          *jhood@bluewilliams.com*
          1060 West Causeway Approach
          Mandeville, LA 70471
          Telephone: (504) 830-4977
          Facsimile: (504) 849-3883
          ATTORNEYS FOR DEFENDANT,
          STALLION OILFIELD SERVICES, LTD.

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May, 2014, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to opposing counsel by operation of the court's electronic filing system. I also certify that I have mailed by United States Postal Service this filing to all non-CM/ECF participants.

          */s/ Scott A. Soule*

          Scott A. Soule

1916837-1