UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CHAD BLANCHARD | ) CIVIL ACTION NO.  12-3140 |
| | ) |
| VERSUS | ) |
| | ) HON. PATRICK J. HANNA, USMJ |
| THE UNITED STATES OF AMERICA | ) |
| THROUGH ITS AGENCY THE | ) |
| UNITED STATES ARMY CORPS OF | ) |
| ENGINEERS | ) |

### UNITED STATES' CORRECTED MEMORANDUM
### IN SUPPORT OF ITS MOTION TO AMEND FINDINGS

In accordance with Rule 59(b) of the Federal Rules of Civil Procedure, the United States moves the Court to amend its findings, conclusions, and judgment (ECF No. 50). A purely legal question is presented:

> Does the collateral source rule require that the United States pay Plaintiff Chad Blanchard's past medical expenses not once, but twice?

The United States respectfully submits that the collateral source rule does not require such a result. The rule exists to prevent a tortfeasor from escaping liability, not to require that a tortfeasor pay the same damages twice. *See Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 304 (5th Cir. 2008) (properly understood, the collateral source rule prevents tortfeasors from paying twice for the same injury); *accord Davis v. Odeco, Inc.*, 18 F.3d 1237, 1244 n.21 (5th Cir. 1994); *Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 930 (5th Cir. 1992).

## BACKGROUND

Blanchard sued the United States claiming that he had suffered injuries to his "neck, shoulder, back, and body as a whole." ECF No. 1 (Compl.) ¶ 10. He subsequently amended his complaint to add his employer, Stallion Oilfield Services, Ltd. ("Stallion"), as a defendant. ECF No. 10 (Am. Compl.). The United States answered Blanchard's complaint. ECF No. 14 (U.S. Answer). Stallion also answered, and it filed a cross-claim against the United States. ECF No. 15 (Stallion Answer & Cross-cl.). The United States answered Stallion's cross-claim and filed its own cross-claim against Stallion. ECF. No. 18 (U.S. Answer & Cross-cl.). Thus the parties were joined.

At the time of his August 18, 2011 accident, Blanchard was a Jones Act seaman employed by Stallion as a deckhand aboard the M/V ALLURA, a two-man pushboat.[1] Tr. 4-5. The M/V ALLURA was moored on the Atchafalaya River. Tr. 6-7. Blanchard was working alone aboard it when a U.S. Army Corps of Engineers vessel, the M/V MISSISSIPPI, sailed past the M/V ALLURA trailing a wake. *Id*. The Court found that the larger vessel's wake rocked the M/V ALLURA, causing Blanchard's accident. The Court explained as follows:

> At the time the MISSISSIPPI approached and passed the ALLURA, the plaintiff was attempting to descend an internal ladder into the engine room. To get to the engine room from the after deck, the plaintiff passed through a doorway with an 8-inch coaming into an interior space where a ladder with five or six steps led down to the engine room deck. The ladder has a single steel handrail that, when facing the steps, would be to the left-hand side.

---

[1] *See* Reporter's Official Transcript of the Findings of Fact and Conclusions of Law Given during the Bench Trial by the Honorable Patrick J. Hanna, United States Magistrate Judge, June 20, 1014 ("Tr.").

>   Just before he fell, the plaintiff stood on the narrow top of the ladder with two one-gallon jugs of oil in his left hand preparing to descend the ladder. As he turned, in the same movement, he switched the two one-gallon jugs from his left hand to his right hand so that he could grip the railing on his way down. It was during this transition, as he pivoted on the narrow landing while switching the two one-gallon jugs of oil from his left hand to his right, that he fell down the ladder as the vessel rocked to the wake from the M/V MISSISSIPPI.

Tr. 15.

The Court concluded that "the wave wash created by the M/V MISSISSIPPI was [the sole] legal cause of the accident which resulted in the injury to the plaintiff." Tr. 28. The Court held that "the Army Corps of Engineers is 100 percent responsible for the damages sustained by the plaintiff with no reduction for comparative fault." *Id*. The Court also found that Blanchard "sustained injuries to his neck, shoulder, elbow, and lower back as a direct result of the incident on August 18 and that [he] continues to suffer from chronic pain in his lower back and his right elbow as a result of these events." Tr. 28-29. The Court awarded Blanchard the damages listed below, plus post-judgment interest:

| Past Pain & Suffering | $185,000 |
|---|---|
| Future Pain & Suffering | +$15,000 |
| Past Wage Loss | +$80,121.48 |
| Future Wage Loss | +$262,868.14 |
| Past Medical Expenses | +$42,794.44 |
| Blanchard's Total Award | $585,784.06 |

Tr. 29-31. Blanchard's damages thus included past medical expenses, however, future medical expenses were not awarded.

3

In addition to Blanchard's damages, the Court made a separate award to Stallion based on its cross-claim. Tr. 31-34. The award included "cure," a term that refers to the same past medical expenses separately awarded to Blanchard. In sum, the Court awarded Stallion the following damages, plus post-judgment interest:

| | |
|---|---:|
| Maintenance | $28,732 |
| Cure (Past Medical Expenses) | +$42,794.44 |
| Maintenance and Cure Reimbursed to Zurich | +$23,023.92 |
| Deductible | +$10,000 |
| Stallion's Total Award | $104,550.36 |

Applying the collateral source rule, the Court did not allow a set-off or credit to the United States for the duplicative past medical expenses. Unless the judgment is amended, the United States will pay twice. Acknowledging this fact, the Court explained:

> The Court does not believe that the government is entitled to a credit for past medical benefits paid in addition to owing indemnity to Stallion although the Court is very troubled by that. The collateral source rule provides that a tortfeasor is barred from reducing the damages it owes to a plaintiff by the amount of recovery that plaintiff received from sources of compensation independent of the tortfeasor. That would be *Johnson v. Cenac Towing*, 544 F.3d 296 (5th Cir. 2008).
>
> [W]e looked hard and we found no authority that would allow [the United States] a credit for that amount of money. If you [*i.e.*, government counsel] find it, the Court will gladly entertain a motion that is timely filed.

Tr. 33. As discussed below, the United States respectfully submits that, as the Fifth Circuit interprets it, the purpose of the collateral source rule is to prevent a tortfeasor from escaping liability when an injured party receives compensation from a collateral source. Once a wrongdoer has paid the full measure of damages, however, the rule is vindicated; it does not mandate two payments for the same damages.

## **DISCUSSION**

Compensatory damages serve to make an injured party whole. *Chamberlain v. United States*, 401 F.3d 335, 344 (5th Cir. 2005). "[O]ther than where punitive damages are awarded, an injured party's recovery should be limited to the actual loss suffered." 3-17 *Damages in Tort Actions* § 17.01 (2014) (The Collateral Source Rule); *see also, e.g., Brister v. A.W.I., Inc.*, 946 F.2d 350, 361 (5th Cir. 1991) ("[A] seaman clearly can receive only one recovery for his medical expenses."). When an injured party has received compensation from an outside source, the collateral source rule is called on to prevent the tortfeasor from escaping liability. As a matter of equity, the rule "ordains that, in computing damages against a tortfeasor, no reduction be allowed on account of benefits received by the plaintiff from other sources, even though they have partially or wholly mitigated his loss." John G. Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law*, 54 Cal. L. Rev. 1478, 1478 (1966).

In other words, "[t]he collateral source rule is a substantive rule of law that bars a tortfeasor from reducing the quantum of damages owed to a plaintiff by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor." Robert Force & Martin J. Norris, I *The Law of Maritime Personal Injuries* § 11:10 (2004) (quoting *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994)); *see also Johnson*, 544 F.3d at 304 ("One purpose of the collateral source rule is to ensure that tortfeasors bear the costs of their own conduct.").

Like the majority of collateral source rule cases, *Johnson*, which the Court cites, involved an employer/tortfeasor, Cenac Towing in that case. *See Johnson*, 544 F.3d at

305. Judicial interpretations of the collateral source rule most often arise in that factual setting:

> Liability under the Jones Act and the Federal Employers Liability Act . . . are two contexts in which the employer may both fund a benefit program and be subject to tort suit; not surprisingly, the bulk of the cases exploring the notion of benefits intended to respond to legal liability involve these statutes.

*Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 932 (5th Cir. 1992). In *Johnson*, Cenac Towing was Johnson's Jones Act employer and Johnson was covered by health insurance provided by Cenac. In *Johnson*, "[t]he district court ruled that because the Blue Cross health insurance plan was a collateral source, its benefits could not be deducted from his damage award." *See Johnson*, 544 F.3d at 304. The issue in *Johnson*—not presented here—was "whether [the Blue Cross health insurance was] in the nature of a fringe benefit or deferred compensation or instead reflect[ed] a tortfeasor's effort to indemnify itself from legal liability." *Id.* (citations omitted). Here, however, the United States was a sole-fault third-party tortfeasor, not Blanchard's employer, and it will fully pay Blanchard's past medical expenses when it reimburses Stallion for "cure."[2]

The collateral source rule requires only that the tortfeasor pay *once*: "Properly understood, however, the 'rule also prevents tortfeasors from paying twice for the same injury—a result that would achieve both overdeterrence and overcompensation.'"

---

[2] The term "cure" refers to a seaman's employer's obligation to provide medical care. *See, e.g., McBride v. Estis Well Serv.*, 731 F.3d 505, 508 (5th Cir. 2014) ("Traditionally, general maritime law afforded ill and injured seamen two causes of action against shipowners and employers. If a seaman became ill or injured while in the service of the ship, the seaman's employer and the ship's owner owed the seaman room and board ('maintenance') and medical care ('cure') without regard to fault, and, if not provided, the seaman had a claim against them for 'maintenance and cure.'").

*Johnson,* 544 F.3d at 304 (citing *Davis*, 18 F.3d at 1244 n.21); *see also* Force & Norris, *Maritime Personal Injuries* at § 11:10 (quoting *Davis* to this effect). "The rule is intended to ensure that the availability of outside sources of income does not diminish the plaintiff's recovery, not make the tortfeasor pay twice." *Phillips v. W. Co. of N. Am.*, 953 F.2d 923 (5th Cir. 1992) (citing *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir. 1986); *Thomas v. Shelton*, 740 F.2d 478, 484-85 (7th Cir. 1984)). The collateral source rule "condones multiple recovery [sic] to avoid giving the tortfeasor a 'windfall.'" Fleming, *The Collateral Source Rule*, 54 Cal. L. Rev. at 1544. Because there is no windfall in this case, the collateral source rule is not called into play.

Moreover, in the recent case of *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 381 (5th Cir. 2012), the Fifth Circuit narrowed the collateral source rule's application where cure payments are concerned, holding that "[t]he collateral-source rule appears incompatible with maintenance and cure." "Because of the unique nature of maintenance and cure, normal rules of damages, such as the collateral source rule in tort, are not strictly applied." *Id*. (*quoting Gauthier v. Crosby*, 752 F.2d 1085, at 1090 (5th Cir. 1985)). The Fifth Circuit held that past medical expenses paid as cure fell outside the scope of, and were not subject to, the rule.

Taken in context, application of the collateral source rule facilitates an insurer's right to subrogation. "In fact, it has been said that one purpose of the collateral source rule to preserve an insurer's right to subrogation." *Global Int'l Marine, Inc. v. U.S. United Ocean Svcs.*, 2011 WL 2550624 at *13; 2011 U.S. Dist. LEXIS 59815 at *38; 2011 A.M.C. 1568 (E.D. La. Jun. 6, 2011). But subrogation plays no role in this case.

7

On these facts, where the sole and original source of cure (Stallion) is being fully indemnified, there is nothing of import to distinguish Stallion from the third-party tortfeasor making the reimbursement.  Put differently, the United States, before being adjudged liable, owed no duty of maintenance and cure to the plaintiff.  Now, stepping into Stallion's shoes by way of a dollar-for-dollar indemnity based on well-documented medical expenses, the original *source* of the cure payments (Stallion) recedes in importance for purposes of the applying the rule.  There is no benefit associated with allowing the United States a setoff for Blanchard's past medical expenses.  On the other hand, making the United States pay twice for these categories of damages is inequitable.

## CONCLUSION

For the foregoing reasons, Plaintiff is not entitled to the application of the collateral-source rule, which would deprive the United States of a credit for its reimbursement to Stallion and provide Blanchard with a double recovery.  The United States respectfully requests that the Court amend its findings and conclusions with respect to the collateral-source rule.

DATED:  July 28, 2014

                                                Respectfully submitted,

                                                STUART F. DELERY
                                                Assistant Attorney General

                                                STEPHANIE A. FINLEY
                                                United States Attorney

                                                JENNIFER B. FREDERICK (#23633)
                                                Assistant United States Attorney

        */s/ Stephen M. Ketyer*
STEPHEN M. KETYER
Trial Attorney
Aviation/Admiralty Litigation
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Washington, DC 20044-4271
stephen.ketyer@usdoj.gov
(202) 616-4034
(202) 616-4159 (Fax)
*Attorney for United States of America*

OF COUNSEL:

ALLEN SCOTT BLACK
Assistant District Counsel
Memphis District
U.S. Army, Corps of Engineers
167 N. Main Street, Rm. B-202
Memphis, TN 38103
allen.s.black@usace.army.mil
Tel. (901)544-3662
Fax (901)544-3336