UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

CHAD BLANCHARD                      CIVIL ACTION NO. 12-cv-3140

VERSUS

THE UNITED STATES OF AMERICA        MAGISTRATE JUDGE HANNA

_____

**MEMORANDUM RULING**

This case comes before this Court by consent of the parties pursuant to 28 U.S.C. § 636(c). Following trial on the merits, the United States on behalf of the U.S. Army Corps of Engineers filed a Motion to Amend Findings, Conclusions and Judgment pursuant to Fed.R.Civ.P. 59. [Doc. 59]. For the reasons which follow, the motion is denied.

**Factual and Procedural Background**

On August 18, 2011, the plaintiff, Chad Blanchard, worked as a deckhand aboard the M/V ALLURA, a two-man pushboat. The vessel was moored on the Atchafalaya River. Blanchard was working alone on the vessel when a Corps of Engineers' vessel, the M/V MISSISSIPPI, sailed past the ALLURA, trailing a wake. The wake rocked the ALLURA, causing Blanchard's accident and injury. At the time of the accident, Blanchard was an employee of Stallion Oilfield

1

Services, Ltd. which also owned the ALLURA. His status as a seaman under the Jones Act is stipulated.

As a result of the accident, Blanchard brought a claim under the general maritime law against the United States, as owner and operator of the M/V MISSISSIPPI. He also brought a claim for damages against Stallion under the Jones Act and general maritime law as well as a claim for failure to timely or adequately pay maintenance and cure. Stallion filed a cross-claim against the United States seeking indemnity for any maintenance and cure benefits paid or to be paid to the plaintiff. The United States answered the cross-claim and filed its own cross-claim against Stallion for tort contribution.

Following trial on the merits, this Court ruled that Stallion was not negligent under the Jones Act, and the M/V ALLURA was not unseaworthy. The Court also denied the plaintiff's claim that Stallion unreasonably failed to timely or adequately pay maintenance and cure. The Court found the United States to be 100% at fault for the accident which caused the damages at issue. Damages were awarded in the amount of $585,784.06, plus post-judgment interest. Of that total, the parties stipulated that $42,794.44 was for past medical expenses.

Since Stallion was found free from fault, judgment was rendered in favor of Stallion against the United States, for recovery of maintenance and cure payments

made to Blanchard by Stallion in the stipulated amount of $104,550.36, plus post-judgment interest.  The stipulated amount awarded to the plaintiff for past medical benefits is the same figure as the stipulated amount paid as cure by Stallion for which this Court found Stallion was entitled to be indemnified by the United States. The Court ruled that Stallion's obligations to pay Blanchard maintenance and cure benefits continue into the future until Blanchard reaches maximum medical improvement, and that the United States remains liable for reimbursement to Stallion for those amounts paid. The cross-claim of the United States against Stallion was denied. Judgment was entered consistent with these rulings on June 23, 2014.[1]

The United States contends in its motion that it is being required to pay the plaintiff's medical expenses twice-once to the plaintiff and once to Stallion-and that this Court's application of the collateral source rule to allow that to occur was erroneous.

## Applicable Substantive Law and Analysis

This case was tried to the bench and the Court issued its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.  The United States couches its motion under Rule 59 as a "purely legal" question. Pursuant to Rule 59(a)(2) the

---

[1] Rec. Doc. 50.

court may "amend findings of fact and conclusions of law or make new ones, and direct entry of a new judgment." This rule "accords with reason" in order for a judge not to be "forced to perpetuate a finding of fact or conclusion of law which he discovers to be erroneous." *United States v. Hollis,* 424 F.2d 188, 191 (4th Cir. 1970).

In its findings and conclusions, this Court acknowledged that it was troubled by the fact that, based on the jurisprudence applying the collateral source rule, it did not appear the government was entitled to a credit in the award to the plaintiff for past medical benefits paid on behalf of the plaintiff even though it would owe indemnity to Stallion for the cure benefits it paid. Since the Court could find no authority that would allow the government such a credit and the issue had not been specifically briefed prior to trial, the Court invited the government to bring this motion if it had any authority to suggest to the contrary. While providing no jurisprudence specifically on point, the government essentially argues both the policy set forth in distinguishable cases and equity should preclude the government from paying damages for the same injury to two different entities with two different causes of action-the plaintiff pursuant to his tort cause of action, and the employer pursuant to its indemnity cause of action.

This case presents a clash of multiple well-settled principles. "The collateral source rule bars a tortfeasor from reducing the damages it owes to a plaintiff 'by

4

the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor'. . . One purpose of the collateral source rule is to ensure that tortfeasors bear the costs of their own conduct. . . Properly understood, however, the 'rule also prevents tortfeasors from paying twice for the same injury-a result that would achieve both overdeterrence and overcompensation.'" *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 304 (5th Cir. 2008) (quoting *Davis v. Odeco, Inc.* 18 F.3d 1237, 1243-1244 (5th Cir. 1994)).

In this case, there is no question that the government has no connection with the benefits paid by Stallion pursuant to its maintenance and cure obligation. There is also no question that cure payments were made independent of the government because, under federal maritime law, "a seaman's right to maintenance and cure is implied in the employment contract between the seaman and the shipowner. It in no sense is predicated on the fault or negligence of the shipowner." *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir.1994); *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 380-81 (5th Cir. 2012). When a seaman is injured his employer as shipowner is "almost automatically liable for the cost of medical treatment." *Id.,* (quoting *Brister v. A.W.I. Inc.,* 946 F.2d 350, 360 (5th Cir. 1991)). The "duty to pay maintenance and cure . . . is unrelated to any duty of care under tort law." *Id.,* (quoting *Davis v. Odeco, Inc.* 18 F.3d at 1246); *Adams v. Texaco, Inc.,* 640 F.2d 618, 620 (5th Cir.

1981). "[T]he seaman's right to receive, and the shipowner's duty to pay, maintenance and cure is independent of any other source of recovery for the seaman (e.g., recovery for Jones Act claims)." *Bertram v. Freeport McMoran, Inc.,* 35 F.3d at 1013 (quoting *Brister v. A.W.I. Inc.*, 946 F.2d at 361.).

The right to cure in the event the seaman is injured or falls ill while in the service of the ship is a benefit the plaintiff obtained by accepting his employment and being exposed to the perils of working aboard a vessel.  It assures the seaman that he will be entitled to *curative* medical treatment for either illness or injury funded by his employer until the point he reaches maximum medical improvement.  In that sense, the character of cure is in the nature of a fringe benefit and the source is completely independent of the tortfeasor.

Since the government has no connection to the payment of cure benefits, and the contractual obligation to pay those benefits by the employer is completely independent of and unrelated to the duty owed by the government to the plaintiff under tort law, the payments derive from a collateral source.  By strict application of the collateral source rule, the United States as the tortfeasor, would not be able to reduce the damages it owes to the plaintiff by the amount of those payments.  The outcome would be no different if the plaintiff had received worker's compensation benefits or private health insurance benefits instead of cure.

It is equally well-settled that the employer may recover maintenance and cure payments "from a third-party whose negligence partially or wholly caused the seaman's injury." *Id.; Savoie v. LaFourche Boat Rentals*, 627 F.2d 722, 723 (5th Cir.1980); *Adams v. Texaco, Inc.,* 640 F.2d at 620. "Indemnification of the innocent employer is based on the commonsense principle that a party whose neglect has caused or contributed to the need for maintenance and cure payments should reimburse the cost of those payments . . ." *Bertram v. Freeport McMoran, Inc.,* 35 F.3d at 1014 (quoting *Savoie v. Lafourche Boat Rentals,* 627 F.2d at 723). "[I]mposition of liability on the tortfeasor ... is not too 'indirect' a consequence of his negligence to allow recovery. The shipowner's obligation—imposed by the law itself—is not so unforeseeable by a tortfeasor as to bar recovery." *Id.,* (quoting *Adams v. Texaco, Inc.*, 640 F.2d at 620, n. 2).

The government does not contest either of these propositions, rather, the government argues that it is paying for the same damages twice, and in doing so, the result would run afoul of the policy to avoid "overdeterrence and overcompensation." *Davis v. Odeco, Inc.,* 18 F.3d at 1244 n. 21.

In *Johnson v. Cenac Towing,* which is readily distinguishable but persuasive, the court, citing *Davis* as controlling, refused to apply a set-off for benefits received by the plaintiff from a Blue Cross plan funded entirely by his

employer who was also the tortfeasor. Key to the decision in both cases was the benefits paid under the employer-funded plan did not apply to work-related injuries and the plaintiffs were probably not entitled to those benefits. Nonetheless, in essence, the employer paid twice for the same thing because the collateral source rule applied. However, the court was clearly aware of what appeared to be an inequitable result:

> Under the terms of the Blue Cross plan, however, if Blue Cross extends benefits for a work-related injury and the employee's "injury or illness is found to be compensable under law," then Johnson or Cenac (as the tortfeasor) "must reimburse" Blue Cross for the benefits extended. Additionally, the plan entitles Blue Cross to recover any payment made in error to an employee for non-covered services. If Blue Cross were to seek reimbursement from Cenac for the benefits extended to Johnson, Cenac would be placed in the position of paying three times for Johnson's injury. That result certainly cannot be justified under the collateral source rule. In such an event, Johnson must hold Cenac harmless for reimbursement demanded by Blue Cross against Cenac.

*Johnson v. Cenac Towing, Inc.,* 544 F.3d at 307.

Equally persuasive and also distinguishable is the recent decision of *Manderson v. Chet Morrison Contractors, Inc.* in which the court stated "[t]he collateral-source rule appears incompatible with maintenance and cure." *Id.,* 666 F.3d at 381. The court found the amount of cure the employer owed was not what the health care provider charged, rather it was what the provider accepted in full satisfaction from private health insurance for which the premiums were funded

8

entirely by the seaman. Citing *Davis*, the court stated that "an injured seaman may recover *maintenance and cure* only for those expenses 'actually incurred'", then recognizing the employer received the full benefit of the seaman's bargain, stated "'[a]lthough this benefit conferred on CMC may . . . have presented a problem in the tort context (with CMC paying compensatory damages), it is not a problem here, where fault is not an issue and CMC is liable only for maintenance and cure." *Id.,* at 382. (Emphasis added).

This Court interprets these cases as placing the policy of requiring the tortfeasor to bear the cost of its conduct as a priority in applying the collateral-source rule even at the expense of making the tortfeasor pay more than it might otherwise pay. What makes this case different from any other collateral source case involving worker's compensation benefits, or the dicta in *Johnson* as it pertains to private insurance benefits, is the employer is not statutorily or contractually subrogated to the rights of the plaintiff. Rather, the employer's claim for reimbursement of maintenance and cure is a separate, non-derivative claim.

Applying the rationale of *Jones v. Waterman S.S. Corp.,* 155 F.2d 992 (3rd Cir. 1946), that was recognized as good law in *Bertram*, had the plaintiff never amended his original complaint, leaving the United States as the sole defendant found to be 100% at fault, by operation of the collateral source rule, the United

States would be cast in judgment for the full amount of Blanchard's past medical expenses regardless of the fact that those medical expenses were already paid by Stallion. Even if the plaintiff executed the judgment or settled with the tortfeasor, the plaintiff would still have been able to bring a separate cause of action against Stallion for maintenance and cure for which Stallion could seek indemnity from the United States. The reasoning of *Waterman* is premised on the fact that the third party tortfeasor and the employer who owes maintenance and cure pursuant to its employment contract with the seaman are not joint tortfeasors and the indemnity claim is not a derivative right through the seaman, but a separate and distinct cause of action which vested in Stallion when it paid its first maintenance or cure benefit. *Jones v. Waterman S.S. Corp.,* 155 F.2d at 995-96, 999-1001; *Bertram v. Freeport McMoran, Inc.,* 35 F.3d at 1013-1014.

In both *Bertram* and *Waterman*, the seaman had settled with the tortfeasor.[2] The employer brought claims for reimbursement of maintenance and cure paid to the seaman and the settlements were neither used as a bar nor a means to reduce the employer's full reimbursement for maintenance and cure benefits paid. In a thorough discussion of *Waterman* and its progeny, the court's reasoning is what

---

[2] In *Waterman,* the plaintiff had actually gone to trial against the tortfeasor and recovered damages. However, the trial court granted a new trial and the plaintiff settled with the tortfeasor. *Jones v. Waterman S.S. Corp,* 155 F.2d at 994-95.

compels the conclusion reached in this case:

> At bottom, Houma's contention misapprehends the parties' relationships to one another, and the nature of Energy's cross-claim. Energy's maintenance and cure obligation arises as a matter of law, through its relationship with Bertram and despite its being without fault. . . .Second, again in contrast to *Hardy*, Energy's claim against Houma is *not* for recovery over for "the amount of damages [Energy] owes the plaintiff", i.e., Bertram. . . . Rather, it is for reimbursement of maintenance and cure; and that claim is "not a derivative right through [Bertram,] but [wa]s a separate and distinct cause of action which [vested] in [Energy] when it [wa]s ascertained what sum of money [wa]s due" from Energy to Bertram. *Waterman*, 155 F.2d at 1001; accord, *United States v. Tug Manzanillo*, 310 F.2d 220, 222 (9th Cir.1962) (employer's right to recover maintenance and cure from tortfeasor accrued "the moment the [employer] paid these sums" to seaman, regardless of release between seaman and tortfeasor).

*Bertram v. Freeport McMoran, Inc.,* 35 F.3d at 1015 (emphasis in original)(some citations omitted).

Indemnity, by definition, transfers the entire debt from the indemnitee to the indemnitor, or in this context, the tortfeasor. Since Stallion's indemnity claim is not based on Stallion being subrogated to the rights of the plaintiff, but is a separate, vested cause of action in Stallion, the tortfeasor must make Stallion whole and not at the expense of reducing the plaintiff's recovery as a matter of law.

While it is a convenient fact that the amounts paid by Stallion as cure are the same as the amounts of Blanchard's past medical expenses, a blanket statement

11

that an exception should be created to set off a past medical expense by amounts paid in cure by a third party, a clear collateral source, creates a slippery slope this Court is not inclined to take. It is a fundamental concept that cure does not apply to palliative treatment because the seaman is considered to have reached maximum medical improvement. *Pelotto v. L& N Towing, Co.,* 604 F.2d 396, 4001 (5th Cir. 1979).  However, a plaintiff who brings a claim for damages under the general maritime law is entitled to all past medical expenses caused by the accident and injury.  Since cure is only owed by the employer to the point the seaman reaches maximum medical improvement, palliative medications beyond that date could quite conceivably fall into the category of past or future medical expenses.

## Conclusion

While it may appear Blanchard may double-recover by way of the collateral source rule, the fault-free cross-claimant and injured party Stallion will recover only once, with its recovery limited to the actual loss suffered.  Since Blanchard and Stallion have separate and independent losses, it cannot be said that the sole-fault tortfeasor defendant in this case is "paying twice for the same injury" as the United States suggests.  In fact, the defendant will pay once, for two separate injuries, as suggested by *Waterman* and followed in *Bertram,* which happen to be in the same amount.

As this Court has acknowledged, this result may be troubling, but the collateral source rule is clear, as is the maintenance and cure recovery provision, and given the priority afforded to the policy that the tortfeasor should bear the responsibility for its conduct the Court finds no basis for deviation from either rule. Therefore, the defendant's motion is DENIED.

Signed at Lafayette, Louisiana this 19th day of September, 2014.

_____
Patrick J. Hanna
United States Magistrate Judge